

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| PNC Bank, National Association, successor in interest by merger to National City Bank, successor in interest by merger to MidAmerica Bank, FSB<br><br>Plaintiff,<br><br>vs.<br><br>Randall Road Joint Venture, an Illinois general partnership; Chicago Title Land Trust Company, successor trustee to Amcore Investment Group as Trustee Under Trust Agreement Dated December 15, 1993 and Known as Trust Number 3504; Jeffrey R. Dunham; Robert R. Dunham; Power Pizza Company d/b/a Jake's Pizza, an Illinois domestic corporation; Phoenix Leasing Incorporated, a foreign corporation;<br><br>Defendants. | No. 13 cv 07271<br><br>Property Address:<br>124-136 S. Randall Road<br>Algonquin, Illinois 60102<br><br>Assigned Judge: Robert M. Dow, Jr.<br>Magistrate Judge: Mary M. Rowland |

## ORDER APPOINTING RECEIVER

THIS CAUSE was heard on the Petition for Appointment of Receiver filed by the Plaintiff, PNC Bank, National Association, successor in interest by merger to National City Bank, successor in interest by merger to MidAmerica Bank, FSB, ("Plaintiff" or the "Bank") pursuant to the Illinois Mortgage Foreclosure Act, 735 ILCS 5/15-1101 *et seq.*, seeking an order appointing Joshua E. Joseph of Frontline Real Estate Partners, LLC, as receiver for the nonresidential property located at as 124-136 S. Randall Road, Algonquin, Illinois 60102. That property is the subject of plaintiff's complaint in mortgage foreclosure. The court has jurisdiction over the parties and subject matter and is fully advised in the premises.

## FINDINGS OF FACT

1. The plaintiff filed a complaint ("Complaint") seeking to foreclose a mortgage which alleges that Randall Road Joint Venture defaulted on its obligations. A copy of the mortgage dated August 31, 2006, is attached to the complaint and was recorded as document number 2006R0065598 with the McHenry County Recorder of Deeds, against the subject property identified above. The mortgage secures a promissory note dated August 31, 2006 in the original principal amount of $1,225,000.00. A true and correct copy of the Note is attached to the Complaint as Exhibit "C".

2. The property consists of consists of a single story, masonry constructed, commercial retail store, and is owned by the Mortgagor for commercial/investment purposes and is not used by Mortgagor as Mortgagor's personal residence.

3. The Complaint alleges that "Events of Default," as defined in the Mortgage and Notes, occurred due to the Mortgagor's failure to pay the Note in full at maturity on August 3, 2011. Said Event of Default gives Plaintiff the right to accelerate all amounts due under the Note and Mortgage and to demand the same be immediately payable.

4. The mortgage provides on page 9 that upon the occurrence of an Event of Default, the mortgagee shall have the right to make application for appointment of a receiver for the property.

5. The property does not fall within the definition of "Residential Real Estate" under the Illinois Mortgage Foreclosure Law (735 ILCS 5/15-1219).

6. The Mortgagor, Chicago Title Land Trust Company, successor trustee to Amcore Investment Group as Trustee Under Trust Agreement Dated December 15, 1993 and Known as Trust Number 3504, has accepted service of a copy of the Complaint.

7. Based on the allegations of the Complaint, the terms and provisions of the Mortgage and the Note secured thereby, and the motion to appoint a receiver, there is a reasonable probability that Plaintiff will prevail on a final hearing in this matter. The Mortgagor has not shown good cause why the receiver should not be appointed.

8. The receiver, Joshua E. Joseph of Frontline Real Estate Partners, LLC, whose biographical information is included as part of Plaintiff's motion, appears to be qualified to act as receiver and to manage the Property as would a prudent person, taking into account the effect of receiver's management on the interest of the Mortgagor.

**IT IS HEREBY ORDERED:**

1. The receiver, Joshua E. Joseph of Frontline Real Estate Partners, LLC, whose biographical information is included as part of Plaintiff's motion, appears to be qualified to act as receiver and to manage the Property as would a prudent person, taking into account the effect of receiver's management on the interest of the Mortgagor.

2. Plaintiff's Petition for Appointment of a Receiver for the Property is granted and the the above-named receiver is hereby appointed.

3. Until further notice of this Court, all persons or entities, including but not limited to tenants in possession of the Property or any portion thereof, and any persons liable therefore, shall pay to the Receiver all rents, income, or other amounts now due and unpaid and all rents, income, or other amounts hereafter to become due on their respective tenancies and Mortgagor either directly or through their agents, servants, representatives and attorneys, shall not, until further order of Court, collect any rents or fees from or incident to the Property and shall not interfere in any manner with the Property, the Receiver or the Receiver's management of the Property.

4. The Receiver shall have immediate possession of the Property, which shall include all property secured by the Mortgage including both real and personal property, and shall have full power and authority to operate, manage and conserve such property. Without limiting the foregoing, the Receiver shall have the power and authority, immediately upon the entry of this Order, to:

(a) secure tenants and execute leases for the Property, the duration and terms of which are reasonable and customary for the type of use involved, and such leases shall have the same effect as if made by the Defendant;

(b) collect the rents, issues, account receivables, insurance claim proceeds, real estate tax refunds, utility deposits, security deposits and profits from the Property from any time period;

(c) insure the Property against loss by fire or other casualty, which may include, but not be limited to, the following coverage's, from any insurer or prospective insurer: property, liability (and excess liability), auto liability, workers compensation, EPLI, employer liability, employee dishonesty, business interruption, boiler and machinery, builders risk, construction bonding, environmental, terrorism, other bonding professional liability and errors and omissions; employ construction managers, general contractors, subcontractors, architects, engineers, consultants, title companies, environmental consultants, asset managers, property managers, leasing agents, administrative support, attorneys, security companies, custodians, janitors, maintenance workers, repairman/contractors, assistants, agents, accountants and other employees reasonably deemed necessary, appropriate, or desirable to assist the Receiver in diligently executing the duties imposed upon the Receiver by this Order including, but not limited to, the maintenance and operation of the Property;

      (d)  pay taxes which may have been or may be levied against the Property;

      (e)  establish bank accounts, including having the right and power to (i) require said bank to convert the account name on accounts maintained by Mortgagor to such name as requested by the Receiver; (ii) modify the authorized signors on the account maintained by Mortgagor to those persons requested by the Receiver; (iii) delete any signors to the account maintained by Mortgagor as requested by the Receiver; and (iv) ensure compliance with other similar requests made by the Receiver, including but not limited to using the Mortgagor's TIN (FEIN or SSN) while naming the account as a receivership account;

      (f)  receive all rents and proceeds from the Property (whether historical, current or prospective), including, but not limited to, security deposits, rents, accounts receivable, insurance claim proceeds, real estate tax refunds, utility deposits, security deposits, and earnest money deposits presently in the possession of the Mortgagor and/or its agents;

      (g)  make all repairs, declarations, renewals, replacements, alterations, additions, betterments, and improvements in connection with the Property as may seem judicious to the Receiver;

      (h)  hire or retain any agents necessary or appropriate to do any of the duties listed above without further approval of this Court, including, but not limited to, accountants, attorneys, environmental consultants and personnel, brokers, property managers, maintenance personnel, and/or security personnel and specifically, the Receiver is authorized to retain Frontline Real Estate Partners, LLC for the leasing services at the Property with the leasing commission structure to be approved by the Court at such time as commercial leases are submitted for approval by the court;

   (i) insure and reinsure the Receiver, his agents, and/or the mortgaged Property against all risks incidental to the Receiver's possession, operation, and management thereof. The Receiver may secure new insurance policies, if necessary and finance them;

   (j) terminate or enter into vendor or other contracts pertaining to the Property as Receiver may determine in its sole judgment are necessary, with no further obligation or liability (including not having to pay any termination fees) under any terminated contract;

   (k) procure or maintain utility services for the Property, to include but not be limited to gas/steam, electric, water, sewer, trash, phone, cable, internet, and snow removal, without suffering, regardless of the internal policies of any utility provider, the termination of such service or refusal to authorize any new account based upon previous unpaid bills for services rendered prior to the appointment of the Receiver or during the term of the Receiver, with any and all accounts to be opened or transferred to the Receiver's name, but using the existing Mortgagor's account information (including the tax identification number (TIN) of the Mortgagor). Further, the Receiver is not responsible for any utility bills accruing prior to its appointment and the Receiver is not personally responsible for any bills during the Receivership;

   (l) take possession of all cash or funds belonging to or for the benefit of Defendants in bank accounts associated with the Property owned by Mortgagor (no matter from what time period), whether in the name of the Property, Mortgagor or its agents or employees, and to open, transfer and change all such bank accounts into the name of the Receiver;

   (m) The Receiver may market or engage a reputable brokerage company to market the Property for sale and, subject to the approval of the Court, execute a sales contract and

proceed with a sale of the Property (or any portion thereof), which sales price shall include commission and marketing expenses incurred for the Property.

(n) institute, prosecute, defend and/or settle such legal proceedings as the Receiver deems necessary relating to the care or possession of the Property and to collect any such sums which may be due from any source relating to use of the Property; and

(o) take such other actions as may be reasonably necessary to conserve the Property and other property subject to the mortgage, or as otherwise authorized by the Court.

2. The Receiver is authorized, without further leave of the Court, to defend or institute and prosecute suits or summary proceedings related to the Property or the duties imposed upon the Receiver by this Order, including but not limited to proceedings (a) for the collection of rents, income, and other amounts (which include tenants who have vacated their space), (b) for the removal of (i) any tenant or tenants in default (whether for failure to pay rent or other amounts when due, or otherwise, including violation of the Property rules) (ii) any tenant or tenants whose terms have expired and have not been renewed, or (iii) any other person(s) or entity(ies) unlawfully in possession of the Property, or (c) otherwise related to the Property or the duties imposed upon the Receiver by this Order. This Order shall act as notice to all tenants of the Property that the loan on this property is in default and the Property is in the foreclosure process.

3. The Receiver shall manage the Property as would a prudent person, taking into account the effect of the Receiver's management on the interest of the Plaintiff and Mortgagor. The Receiver may, without an order of the court, delegate managerial functions to a person in the business of managing real estate of the kind involved who is financially responsible and prudently

selected. To the extent the Receiver receives sufficient receipts from the Property, and except to the extent ordered otherwise by the Court, the Receiver:

    (a)    shall maintain the existing casualty and liability insurance required in accordance with the Mortgage or applicable to the Property at the time the Receiver took possession, or shall find more cost-effective replacement insurance of comparable coverage with replacement insurers, and, to that extent, existing insurers of the Property are hereby ordered to release claims history on existing policies to Receiver;

    (b)    shall use reasonable efforts to maintain the Property in at least the same condition as existed at the time the Receiver took possession, excepting reasonable wear and tear and damage by any casualty;

    (c)    shall apply receipts to payment of ordinary operating expenses, including utilities, rents and other expenses of management;

    (d)    may pay the amounts due under the Mortgage provided sufficient funds are available after reasonable reserves;

    (e)    may make other repairs and improvements necessary to comply with building, life-safety and other similar codes or with such other contractual obligations as the Receiver deems affect the Property;

    (f)    may hold receipts as reserves reasonably required for the foregoing purposes;

    (g)    may take such other actions as may be reasonably necessary to conserve the Property, or as otherwise authorized by the Court, provided sufficient funds are available; and

    (h)    may also, with prior Court approval, pay any and all other outstanding obligations to suppliers incurred in arm's length transactions who, prior to the entry of this Order,

supplied materials, business supplies and/or labor to or for the benefit of the Property, but only to the extent the Receiver shall determine, in his sole judgment, that it is prudent to do so in order to maintain the business relationships with such suppliers for the benefit of the Property, provided sufficient funds are available from the Property, and without, by so doing, making the Receiver liable for any other antecedent debts relating to the Property.

4. To the extent the Receiver decides to continue the services of any current employees, agents or other personnel with respect to the Property, neither the Receiver nor any person or entity engaged by the Receiver hereunder shall be liable for any claims of any nature whatsoever of such employees, agents, or other personnel that arose prior to the date and time of the entry of this Order, which claims include, but are not limited to, unpaid but accrued wages, unpaid but accrued sick time, unpaid but accrued vacation time, unpaid but accrued overtime and/or any and all other liabilities related to unemployment and/or worker's compensation claims.

5. The liability of the Receiver is and shall be limited to the assets of the receivership, and neither the Receiver nor any person or entity engaged by the Receiver hereunder shall be personally liable for any duly authorized actions properly and lawfully taken pursuant to this Order.

6. Within five (5) calendar days of the entry of this Order, Mortgagorand/or its agents and beneficiaries of the trust shall provide or make available to the Receiver the following, to the extent such items and things exist:

    (a) Copies of any and all service contracts pertaining to the Property;

    (b) Copies of any and all leases, lease abstracts, purchase agreements and the like pertaining to the Property;

    (c) All open invoices for services or goods relating to the Property;

(d)     A copy of the 2011 and 2012 year-end financial statements and 2012 - 2013 year-to-date operating and income statements including, to the extent reasonably practicable: balance sheet, income statement, accounts receivable (and receivables/arrearages aging), operating statements, current year budget, sources and uses of cash flow, detailed rent roll, accounts payable, check register, security deposit listing, trial balance, general ledger, contractor statements, lien waivers, sworn owner statements, construction draws, bank reconciliations and bank statement;

(e)     A complete set of keys (including all masters) and all security and/or access codes and/or cards to the Property and a schedule (including full contact information) identifying each person or entity (including security companies, municipal/governmental agencies and utility companies), who currently has one or more keys and/or access cards to the Property or who has knowledge of any access codes thereto;

(f)     In addition to the materials identified in subsection (e) above, upon request of the Receiver, Mortgagor shall provide access to any other records, documents or other information, if any, that Mortgagor may have in its possession concerning the Property, including without limitation: (i) any agreements to which the Property is or may be subject; (ii) any amounts received from the tenants of the Property, from the time Mortgagor took ownership of the Property to the date of entry of this Order; (iii) all liens or other encumbrances on the Property; (iv) property taxes, assessments and related appeals; (v) insurance of all types for Mortgagor related to the Property; (vi) all maintenance and service contracts; (vii) all invoices for services at the Property; (viii) all tenant files, including leases, lease abstracts, purchase agreements and sample leases of the Property; (ix) a current and accurate copy of all electronic information for items related to accounting including tenant escalations/reconciliations from the time Mortgagor took ownership of the Property

to the date of entry of this Order; (x) a schedule of all capital expenditures put into the Property since Mortgagor assumed ownership of the Property and any items of deferred maintenance and capital currently required; (xi) a full and complete rent roll including but not limited to schedules/information related to tenant security deposits, encumbrances, options, escalations, rents and term; (xii) all current or the most recent copy of an ALTA survey, Phase I and Phase II environmental reports, traffic studies, demographic studies, physical condition/engineering reports, building and life-safety code violations, zoning code information related to the Property and appraisal; (xiii) all marketing information (in hard copy and electronic format) including but not limited to brochures, photographs (including aerial), maps, signage, and (xiv) all other aspects of the Property records that are or may be necessary or pertinent to the Receiver's management, maintenance, operation and/or sale of the Property.

        (g)    Any and all insurance loss histories and/or claims on the Property;

        (h)    Any and all other documents relating to the Property as reasonably requested by the Receiver; and

        (i)    All property and all other things of value associated with use, operation and maintenance of the Property.

        7.    Mortgagor shall at all times after the entry of this Order provide full cooperation to the Receiver for carrying out its duties hereunder, and timely respond to all reasonable requests made by the Receiver. Mortgagor's obligation to use best efforts to provide or make available to the Receiver the items and things identified herein shall be continuing.

        8.    So long as any part of the Property remains in the Receiver's possession, the Receiver is directed to prepare and file with the Court, a full and complete report, under oath, setting forth

receipts and disbursements and reporting acts and transactions regarding the execution of the trust of its office as Receiver, including a current inventory of the funds, assets, and property remaining in the receivership, interest in and claims against the same, and all debts and obligations contracted and expenditures made, as directed by the Court. The Receiver is further directed to serve copies of each such report on the attorneys of record for Plaintiff, Mortgagor, and any other party who submits a written request to the Court and the Receiver to be served with copies of such requests. Any party having an objection to the Receiver's report shall file a written objection with the Court no later than ten (10) business days after the date of the Receiver's filing of the report. Any objection not filed within the time prescribed by this Order shall be deemed waived.

        9.        The Receiver may at any time file a motion requesting that it be exonerated, discharged and released from all its appointments as Receiver.

        10.       The Receiver shall not have any responsibility for the preparation or filing of any tax return of any kind for Mortgagor but shall, if so asked by Mortgagor, provide Mortgagor with information within Receiver's possession so that Mortgagor may prepare and file any such returns.

        11.       From and after the date hereof, neither Mortgagor nor anyone associated therewith or acting under the Mortgagor's authority or control shall:

        (a)    possess or manage the Property in any way;

        (b)    collect, withdraw or transfer, in any way, funds or revenue derived from operation of the Property;

        (c)    remove or destroy any property from the Property;

        (d)    terminate or cause to be terminated any license, permit, lease, contract or agreement relating to the Property; or

(e) otherwise interfere with Receiver's possession or operation of the Property.

12. Receipts received from operation of the real estate by the Receiver shall be applied in the following order of priority after payment of expenses associated with the Property:

(a) to payment and reimbursement of the Receiver for all fees, costs and expenses incurred by the Receiver or the Receiver's agents/delegates (including management fees/leasing commissions/reimbursable/construction management fees) in connection with all Property related expenses incurred by the Receiver;

(b) to payment of authorized insurance premiums;

(c) the balance, if any, shall be held or disbursed as ordered by the Court.

13. Mortgagor, its agents, and employees, shall turn over to the Receiver, within five (5) business days from the date this Order is entered, all sums in its possession or control on the date hereof that are related or pertain to, or are derived from the Property, including, but not limited to, (a) all cash in hand, (b) all cash equivalents and negotiable instruments (such as checks, notes, drafts or other related documents or instruments), and (c) all sums held in accounts in any financial institutions, including, without limitation, (i) tenant/lessee security deposits, (ii) deposits held in escrow for any purpose, such as for payment of real estate taxes and insurance premiums, (iii) proceeds of insurance maintained for, or pertaining to, the Property, (iv) rent or prepaid rent, (v) funds designated or intended for capital improvements, repairs, or renovations to, or in connection with, the Property, and (vi) all other sums of any kind relating to the use, enjoyment, possession, improvement, or occupancy of all or any portion of the Property.

14. The Receiver shall, upon the entry of judgment in mortgage foreclosure, be authorized to make and conduct a foreclosure sale upon the issuance of a writ of execution from Plaintiff and

directed to Receiver, pursuant to 28 U.S.C. section 2001, et seq., and shall thereafter pass title to the Property to the successful bidder.

15. The Receiver shall be authorized pursuant to this Order, at any time following the date of entry of this Order, to execute and deliver, on behalf of the Mortgagor, and on terms and conditions acceptable to Plaintiff, any documents necessary to effectuate the assignment to a party or parties satisfactory to Plaintiff the obligations of Mortgagor as evidenced by the mortgage, related notes and other related loan documents (collectively, the "Loan Documents") and the assumption thereof by said party, and this Order shall operate as a power of attorney in favor of Receiver in connection therewith.

16. The Receiver shall be compensated for his services hereunder consistent with the following: (i) a one-time setup and implementation fee equal to $1,500.00 and (ii) a monthly flat fee equal to $2,000.00.

17. Plaintiff shall post a bond in the amount of $75,000.00 by Monday, December 9, 2013.

ENTERED:

_____
Judge

Date: December 5, 2013

James M. Crowley (6182597)
CROWLEY & LAMB, P.C.
221 N. LaSalle Street
Suite 1550
Chicago, IL 60601
(312) 670-6900
jcrowley@crowleylamb.com