

# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

PNC Bank, National Association, successor in
interest by merger to National City Bank, successor
in interest by merger to MidAmerica Bank, FSB

                    Plaintiff.

                  vs.

Randall Road Joint Venture, an Illinois general
Partnership; Chicago Title Land Trust Company,
successor trustee to Amcore Investment Group as
Trustee Under Trust Agreement Dated December 15,
1993 and Known as Trust Number 3504; Jeffrey R.
Dunham; Robert R. Dunham; Power Pizza Company
d/b/a Jake's Pizza, an Illinois domestic corporation;
Phoenix Leasing Incorporated, a foreign corporation;

                  Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

No 13 cv 07271

Property Address:
124-136 S. Randall Road
Algonquin, Illinois 60102

Assigned Judge: Robert M. Dow, Jr.
Magistrate Judge: Mary M. Rowland

**F I L E D**
4 · 15 · 14
APR 1 5 2014

THOMAS G BRUTON
CLERK, U S DISTRICT COURT

## SECOND REPORT OF THE RECEIVER

The Receiver, Joshua E. Joseph, herewith submits a Second Report of Receiver summarizing the
activities performed by the Receiver from January 14, 2014 through March 31, 2014. Pursuant to
the Court Order dated December 5, 2013, Joshua E. Joseph was appointed Receiver for the
mortgaged real estate in the above case commonly known as 124-136 S. Randall Road,
Algonquin, Illinois 60102; herein referred to as the "Property."

## DESCRIPTION OF THE PROPERTY

| | |
|---|---|
| **Location:** | 124-136 S. Randall Road, Algonquin, McHenry County, Illinois |
| **Property Type:** | Retail Strip Center |
| **Gross Building Area:** | 13,850 square feet |
| **Number of Buildings:** | 1 |
| **Number of Units:** | 7 |
| **Year Built:** | 1995 |
| **Construction:** | Brick and block |
| **Land Area:** | 1.38 acres |
| **Parking:** | Approx. 55 asphalt-paved spaces |
| **Condition:** | Average to good |

Photographs of the Property are included as **Exhibit "A"**.

## GENERAL STATUS & RECEIVER ACTIVITY

*Overview*

The Receiver has continued to perform routine inspections of the Property to ensure there are no life safety issues or deferred maintenance requiring immediate action. The Property appears to be in overall average to good condition. The Receiver is collecting rents from the tenants and paying operating expenses to maintain the Property. The Receiver has responded to maintenance issues from the tenants and has also maintained contact with the Plaintiff and Defendants of this case regarding the Property. The Defendants also turned over the security deposits for all tenants besides Clean & Press, Inc. totaling $7,567.00.

Photographs of the Property are included as **Exhibit "A"**.

### *Tenant – New Clique, LLC*

The tenant New Clique, LLC vacated their space on January 15, 2014 due to financial hardship and lack of sales. The lease does not expire until August 2016. The Receiver has negotiated an agreement with the tenant to terminate the lease effective January 15, 2014 in return for a termination fee of $7,359.00 (equivalent to three months of fixed rent) in addition to the $2,453.00 security deposit. The Receiver engaged Stahl Cowen Crowley Addis LLC to draft a lease termination agreement attached as **Exhibit "B"**, and the Receiver requests that the Court approves execution of the agreement in order to offset damages caused by the tenant vacating early.

### *Tenant – Clean & Press, Inc.*

The Defendant still has not turned over a lease for the tenant Clean & Press, Inc. The Defendant has represented that the base rent for this tenant is $3,000 per month, or $12.24 per square foot per year. The Receiver believes that this rental rate is below market level and negatively impacts the Property's value. In addition, the Receiver has procured a Letter of Intent from Family Fabric Care There, LLC d/b/a Tide Dry Cleaners to lease the same premises for $24.50 per square foot per year, a copy of which is attached as **Exhibit "C"**. This prospective tenant is a national credit tenant, and the increased rent level for this space would significantly increase the market value of the Property. The Receiver does not believe that it is in the best interests of the Property to continue leasing the premises to Clean & Press, Inc., an entity affiliated with the borrower, at a below market rent without any lease agreement. The Receiver intends to engage Stahl Cowen Crowley Addis LLC to pursue termination of Clean & Press, Inc. and its subtenants' possession at the Property in order to increase the value of the Property.

### *Tax Appeal*

The Receiver has engaged Schmidt Salzman & Moran, LTD. to appeal the real estate taxes assessed against the Property. The fee is contingent on a successful reduction of the assessed value of the Property, in an amount equal to one-third of the first year's tax saving.

*Marketing*

The order appointing Receiver grants the Receiver authority to market the Property for sale. The Receiver has obtained five (5) offers to purchase the Property which have been disclosed to the Plaintiff and Defendant's counsel via e-mail.

## RECEIVER'S BOND

The Order Appointing Receiver required the posting of a $75,000 bond. The Receiver posted the bond on December 10, 2013, a copy of which is attached to this Report as **Exhibit "E"**.

## INSURANCE

The Receiver has verified that the Plaintiff has placed adequate property insurance coverage on the Property. A copy of the insurance certificate is attached as **Exhibit "F"**.

## PROPERTY TAXES

The Property is located in McHenry County. There is one (1) PIN associated with the Property: 19-30-400-008. The 2012 taxes (payable 2013) totaled $79,679.52 and have been paid in full.

A copy of the most recent tax bill from the McHenry County Treasurer website is attached as **Exhibit "G"**.

## BANKING AND FINANCIAL ACTIVITY

The Receiver has established a bank account to deposit rental income and pay operating expenses for the term of the receivership. From January 1 through March 31, 2014, total receipts were $56,189.36 and total expenses were $17,465.82. The net operating income was $38,723.54. The cash balance on hand as of 3/31/14 was $29,226.54. Financial statements including an income and expense statement, bank reconciliations, receipt register, check register, and aged delinquency report, are included as **Exhibit "H"**.

A current rent roll for the Property is also included in **Exhibit "H"**.

## LITIGATION

The Receiver is not aware of any litigation involving the Property other than the subject foreclosure case.

## RECEIVER'S FEES

A detailed billing statement for the Receiver's fees is attached as **Exhibit "I"**.

## DRAFT ORDER

A draft order approving the Second Report of the Receiver is attached as **Exhibit "J"**.

## TABLE OF EXHIBITS

**EXHIBIT A – PHOTOGRAPHS**
**EXHIBIT B – DRAFT LEASE TERMINATION AGREEMENT**
**EXHIBIT C – LEASE LETTER OF INTENT**
**EXHIBIT D – OMITTED**
**EXHIBIT E – BOND**
**EXHIBIT F – INSURANCE**
**EXHIBIT G – REAL ESTATE TAXES**
**EXHIBIT H – FINANCIAL ACTIVITY & RENT ROLL**
**EXHIBIT I – RECEIVER'S FEES**
**EXHIBIT J – DRAFT ORDER**

### Contact Information for the Receiver

Joshua E. Joseph
707 Skokie Boulevard, Suite 580
Northbrook, IL 60062
(847) 770-6262 Phone
jjoseph@frontlinerepartners.com

Respectfully submitted,

Joshua E. Joseph, as Receiver

# EXHIBIT A





# EXHIBIT B

## LEASE TERMINATION AGREEMENT AND MUTUAL RELEASE

This Lease Termination Agreement and Mutual Release ("Agreement") entered into by and between **JOSHUA E. JOSEPH, COURT APPOINTED RECEIVER IN CASE NO. 13-cv-07271** ("Landlord"), and **NEW CLIQUE LLC**, an Illinois limited liability company ("Tenant", and together with the Landlord sometimes referred to collectively herein as the "Parties" or each a "Party"):

**WHEREAS**, Randall Road Joint Venture, an Illinois General Partnership and Tenant entered into a certain Lease Agreement dated July 13, 2013 (the "Lease"), for the real estate commonly known as 128 S. Randall Road, Store No. 128, Algonquin, Illinois (the "Premises");

**WHEREAS**, the initial term of the Lease expires three (3) years from the Delivery of Possession Date, with two (2) extension options thereafter (the "Term");

**WHEREAS**, in connection with the Lease, Tenant deposited with Landlord an amount equal to Two Thousand Four Hundred Fifty Three and 00/100 Dollars ($2,453.00) as security for Tenant's performance under the Lease (the "Security Deposit");

**WHEREAS**, Tenant has vacated the Premises and Landlord and Tenant desire to, among other things, modify the term of the Lease and resolve, compromise, and completely settle any and all matters arising out of the Lease.

**NOW, THEREFORE**, in consideration of Ten Dollars ($10.00) in hand paid, the mutual promises and covenants contained herein, and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties hereto hereby agree to the following:

1.    **Recitals Incorporated.** The recitals and paragraphs set forth above are hereby agreed to and incorporated in full and made a part of this Agreement.

2.    **Termination Date**. The Term of the Lease is hereby revised to end on January 15, 2014. The "Expiration Date" of the Lease shall hereafter be deemed to mean January 15, 2014. Tenant agrees and acknowledges that it has abandoned any and all Options to Extend the Term of the Lease. As of the Expiration Date, Tenant has delivered possession of the Premises to Landlord with all personal property of Tenant removed in accordance with the terms of the Lease. Any personal property remaining in the Premises after the Expiration Date shall be deemed to be abandoned by Tenant and Tenant hereby waives any right or claim against Landlord relating to same.

3.    **Security Deposit**. In addition to the Termination Fee set forth in Paragraph 4 below, Tenant agrees and acknowledges that it forfeits its right to a return of the Security Deposit and Landlord may retain said Security Deposit.

4. **Termination Fee.** The "Termination Fee" of the Lease shall hereafter be deemed to mean $7,359.00. Provided that Tenant complies with the terms of this Agreement, Landlord has agreed to accept and Tenant has agreed to pay Lessee the Termination Fee, as revised by this Agreement, in full settlement of all matters pertaining to the Landlord, the Lease and the Premises.

5. **Landlord's Release.** Except for any breach or default of this Agreement by Landlord, Landlord does hereby release and forever discharge Tenant and each of its affiliates, officers, directors, employees, agents, successors, predecessors, and assigns for all claims, causes of action, debts, liabilities, or demands of any kind or nature, in law or in equity, which Landlord ever had or now has against Tenant and its affiliates, officers, directors, employees, agents, successors, predecessors, and assigns which arise out of any and all claims, causes of action, debts, sums of money, accounts, or demands which have been or could have been asserted pertaining to the Lease, for or because of any material thing done, omitted or suffered to be done by anyone prior to and including the date hereof.

6. **Tenant's Release.** Except for any breach or default of this Agreement by Tenant, Tenant does hereby release and forever discharge Landlord and each of its affiliates, officers, directors, employees, agents, successors, predecessors, and assigns for all claims, causes of action, debts, liabilities, or demands of any kind or nature, in law or in equity, which Tenant ever had or now has against Landlord, and its affiliates, officers, directors, employees, agents, successors, predecessors, and assigns which arise out of any and all claims, causes of action, debts, sums of money, accounts, or demands which have been or could have been asserted pertaining to the Lease or the Premises for or because of any material thing done, omitted or suffered to be done by anyone prior to and including the date hereof.

7. **Miscellaneous.**

   a. Except as revised by this Agreement, all other terms and provisions of the Lease shall remain in full force and effect until the Expiration Date, provided however, that in the event of any conflict between the Lease and this Agreement, this Agreement shall control.

   b. This Agreement constitutes the full, final and entire agreement and understanding between the Parties with respect to the subject matter of this Agreement, and there are no other prior or contemporaneous written or oral agreements, undertakings, promises, representations, warranties, or covenants not contained herein, any and all prior agreements or representations having been merged herein and superseded hereby.

   c. This Agreement shall be deemed to have been jointly drafted by the Parties and any rule that an agreement shall be construed against the drafter shall not apply to this Agreement.

   d. It is acknowledged that each Party has read this Agreement and has consulted counsel, or knowingly chose not to consult counsel before executing same; each Party has relied upon his or her own judgment and/or that of his or her counsel in executing this Agreement and has not relied on or been induced by any representation, statement or act by any other Party

which is not referred to in this instrument; each Party enters into the Agreement voluntarily, with full knowledge of its significance; and the Agreement is in all respects complete and final. The Parties further represent and warrant that they have not sold, assigned, transferred, conveyed or otherwise disposed of any of the claims covered by this Agreement, and that the persons signing this agreement on behalf of the named entities are duly authorized to do so.

e. All payments set forth in Section 3 and 4 above shall be made payable to Landlord.

f. This Agreement shall be construed and governed by the laws of the State of Illinois, Federal Court residing in Cook County.

g. This Agreement shall not be amended except by a writing signed by all of the Parties hereto.

h. This Agreement remains subject to the approval of the Court in Case No. 13-cv-07271.

i. The Parties agree that a facsimile signature shall have the same force and effect as original signatures. This Agreement may be executed in one or more counterparts, each counterpart to be considered an original portion of this Agreement.

j. This Agreement may not be assigned by any of the Parties hereto, whether by operation of law or otherwise, without the prior written consent of the other Parties hereto, except that any right, title or interest of a Party arising out of this Agreement may be assigned to any partnership or corporation controlling, controlled by, or under common control with such Party, or succeeding to the business and substantially all of the assets of such Party. Subject to the foregoing, this Agreement shall be binding and shall inure to the benefit of the Parties and their respective successors and assigns.

k. The headings, captions and section numbers appearing in this Agreement are for convenience only and are not a substantive part of this Agreement and do not in any way limit, amplify, define, construe or describe the scope or intent of the terms or provisions of this Agreement.

**[THE BALANCE OF THIS PAGE INTENTIONALLY LEFT BLANK; SIGNATURE PAGE TO FOLLOW]**

**IN WITNESS WHEREOF**, the parties have executed this Lease Termination Agreement and Mutual Release as of April _____, 2014.

**LANDLORD:**

**JOSHUA E. JOSEPH, NOT INDIVIDUALLY BUT SOLELY AS COURT APPOINTED RECEIVER IN CASE NO. 13-cv-07271,**

By:_____
      Joshua E. Joseph, Receiver

**TENANT:**

NEW CLIQUE LLC, an Illinois limited liability company

By:_____

Name:_____

Its:_____

# EXHIBIT C



# DRY CLEANERS

2/7/2014

Re: Family Fabric Care Three, LLC, d/b/a Tide Dry Cleaners. ("Tenant") and LANDLORD NAME, LANDLORD ADDRESS ("Landlord"): Potential Build-to-Suit of space located at 136 S Randall Rd, Algonquin, IL (the "Premises")

Mr. Joseph:

This letter will describe the discussions we have had for a potential lease by Tenant of the Premises. As is more fully described in the next to last paragraph of this letter, we understand and agree that the terms of this letter, with the sole exception of the confidentiality section set forth below, are not binding and express only the basic terms we have discussed for the Lease, which each of Tenant and the Landlord is under no obligation to enter into.

1. <u>Tenant</u>. Family Fabric Care Three, LLC,

2. <u>Landlord</u>. LANDLORD NAME

3. <u>Premises</u>. Approximately 2,700 square feet with a drive thru. This offer is expressly contingent upon Tenant receiving from Landlord a No Further Action letter (NFA letter from the EPA) on the space showing that the soil samples prove to be a clean site.

4. <u>Term</u>. Ten (10) years

5. <u>Renewal Options</u>. Tenant will have two options to renew the Lease for a period of five (5) years each. Base Rent during each option period will increase, on a one time basis, by 5% from rent during the last year of the base term, or option term, as the case may be.

6. <u>Delivery Conditions</u>. No later than 180 days from the full execution of the Lease Agreement (the "<u>Delivery Date</u>"), Landlord shall (a) remove the existing tenant, (b) perform environmental testing to prove the site is clean, (c) complete a full turnkey delivery of Tenant's prototype building as described in exhibit B (Construction Documents will be provided at a later date), and (d) deliver the Premises to Tenant. If Landlord for any reason (regardless of force majeure) does not meet these conditions (the "<u>Delivery Conditions</u>") by the Delivery Date, rent shall abate three (3) days for each one (1) day after the Delivery Date that the Delivery Conditions have not been met. If Landlord for any reason (regardless of force majeure) does not satisfy the Delivery Conditions before 210 days from the full execution of the Lease Agreement (the "<u>Deadline</u>"), Tenant shall have the right, for a period expiring sixty (60) days after the Deadline, to terminate the Lease, effective upon delivery of the notice. Should Tenant choose not to exercise its right to terminate as specified herein, Tenant shall abate rent for twelve (12) months beginning on the date that the Landlord actually delivers the Premises in the condition set forth in Section 10 ("Actual Delivery Date").

7. <u>Fixture Period and Commencement of Term</u>. Tenant shall have 150 days after the date Landlord meets the Delivery Conditions to fixture and perform its work in the Premises (the "<u>Fixture Period</u>"). The Term shall begin on the first day after the expiration of the Fixture Period.

8. <u>Rent Commencement</u>. The obligation of Tenant to pay rent and other charges shall begin on the first day after the expiration of the Fixture Period.

9. <u>Tenant Improvements</u>. Upon the signing of this letter of intent, Landlord will provide Tenant with a current survey, CAD files, and as built construction drawings of the Shopping Center and the Premises, including all existing mechanical, electrical and plumbing systems. Landlord hereby approves all modifications and alterations by Tenant to the Premises for the conduct of its business in accordance with Tenant's prototype plan, attached as Exhibit A. If Tenant's application for a certificate of occupancy is denied, Landlord shall pursue Tenant's certificate of occupancy. If Landlord is unable to secure Tenant's certificate of occupancy within 90 days, Tenant shall have the option to terminate the Lease by notice to Landlord.

10. <u>Punch List</u>. Tenant shall have the right, within thirty (30) days after the Delivery Date, to prepare and deliver to Landlord a list of defective and incomplete items of Landlord's work in the Premises (the "<u>Punch List</u>"). Landlord shall promptly repair and complete the items on the Punch List. If, within ten (10) days of receipt of the Punch List, Landlord fails to correct and complete the listed items, Tenant may elect either to terminate the Lease or to complete the Punch List items and deduct the cost thereof from its next due installments of rent.

11. Base Rent. Tenant shall pay the base rent set forth below. Tenant shall not be obligated to pay percentage rent.

Delivery Date – 150 days thereafter          $0.00 per month

Rent Commencement through Year 10          $5,512.50 per month - $66,150/year - ($24.50/sf)

12. Net Charges. Tenant shall pay its proportionate share of common area maintenance, real estate taxes, and insurance, exclusive of charges customarily not paid by national retailers, such as capital costs. Triple net charges are currently estimated at $8.09 per square foot. Operating expenses (exclusive only of expenses for snow removal, utilities, real estate taxes and insurance premiums) will not increase by more than 3% of the prior year's expenses. Administrative/Management expenses will not exceed 10% of common area maintenance charges; provided, however, that in the event CAM charges include any management fee, no administrative expenses may be added to such management fee. Tenant will have customary rights to audit net charges. Copies of accounting statements shall be furnished to Tenant upon request.

13. Use. Operation of a Tide Dry Cleaners.

14. Exclusive. Landlord shall not lease or permit the lease or occupancy of space in the Shopping Center (or any adjacent property owned by Landlord) to any other Tenant that engages in activity similar to that of Tenant. If Landlord violates this provision, all rent and other charges shall abate two days for each day that the competing Tenant occupies space in the Shopping Center.

15. Signage. Tenant may install its standard signage shown in the attached Exhibit C and may also install two (2) panels/sign faces on the multi-Tenant pylon/monument sign at the Shopping Center (Insert Location of Panels). Should any future pylon/monument signs be erected at the Shopping Center which were not erected at the time in which the Lease was executed, Tenant shall have the First Right of Refusal to place its panel on said sign.

16. Maintenance. Landlord will make all repairs, replacements or improvements to the Shopping Center and Premises and appurtenances including but not limited to the roof, foundation, exterior walls, the heating, ventilating and air conditioning equipment, and sprinkler system, to maintain the Premises in good condition and in compliance with all applicable laws, ordinances, codes and regulations. Landlord will warrant the heating, ventilating and air conditioning system for the Term. Landlord will be responsible, at its sole cost and expense, for compliance with the Americans with Disabilities Act for the Shopping Center and the Premises. Tenant will otherwise have maintenance and repair obligations customary for national Tenants. Tenant will have no obligation to repair any property that Landlord is required to maintain or to make any capital improvements or additions within the last three years of the Term. In addition, if either in the event of emergency or after notice, Tenant makes repairs which are otherwise the responsibility of Landlord, Tenant will be entitled to deduct the reasonable cost of the repairs from the next installments of rent. Tenant will not be obligated to return the Premises to its original condition upon expiration of the Lease or any earlier termination that may occur.

17. Representations and Covenants. Landlord shall make representations and covenants customarily contained in leases with national Tenants, such as the condition of the Premises, the zoning of and security for the Shopping Center, the absence of hazardous waste in the Shopping Center, compliance with applicable laws, and similar matters. Tenant shall be entitled to terminate the Lease in the event of a breach of any of these representations and, in the event of a breach of the zoning representation, also to recover all construction and other costs incurred in connection with the Lease.

18. Operating Obligations. Tenant shall have no obligation to operate its business in the Premises.

19. Transfer. Tenant will have customary rights to transfer its interest in the Lease and in the Premises. The Lease shall not contain a change in control provision.

20. Tenant Protections. The Lease will contain customary protections given to national Tenants, including covenants by Landlord not to implement actions or improvements that would adversely affect the visibility of, or access to, the Premises, or that would affect the location of the Premises relative to the exits from or entrances to the Shopping Center. In addition, Landlord will have no right to relocate Tenant from the Premises. There will be no security deposit.

21. Zoning. Landlord hereby warrants that the property/land/Premises are zoned for the use intended in this Lease. Should the Premises not be zoned for the intended use, as defined in Section 14 of this Lease, Tenant shall have the right, at its option, to immediately terminate this Lease with no further obligation to Landlord, financial or otherwise.

Page 2 of 7

22. Brokerage. Landlord and Tenant acknowledge that Baum Realty is acting as Tenant's agent in this transaction. Landlord shall pay Tenant's agent a commission which is common and customary within the marketplace, which shall be agreed upon according to a separate agreement between Landlord and Tenant's agent.

Confidentiality. The terms of this letter are confidential and will not be disclosed by the parties. Except as may be required by law, each party agrees to keep these terms confidential, and to use them solely in connection with the discussions concerning the Lease and the Premises, and to not disclose them to any third party not affiliated with, or representing, advising or working with such party, without the prior approval of the other party.

Terms Not Binding. This letter sets forth the terms of our discussions but is not intended to be a binding or enforceable agreement, except as otherwise provided in the last sentence of this section. Use in this letter of words such as 'shall' and 'will' does not reflect and shall not be deemed to reflect any binding agreement of the parties. The parties contemplate that they will become legally bound only if, as, and when the Lease is executed and delivered by the parties. Each of the parties expressly reserves the right to terminate the negotiations at any time and for any or no reason without incurring any liability to the other party. This letter is not an agreement to negotiate in good faith. Moreover, except as provided in the last sentence of this Section, no past or future action, course of conduct, or failure to act relating to the leasing of the Premises, or relating to the negotiation of the terms of the Lease, will give rise to or serve as a basis for any obligation or other liability on the part of the parties (even if a party has incurred expenses or liabilities of any nature whatsoever in anticipation of or in reliance upon the execution of the Lease). Notwithstanding the foregoing, the parties expressly agree that the provisions of the confidentiality section (and only such section) are intended to be legally binding and enforceable agreements between us in accordance with the terms of such section.

Thank you for your prompt attention and consideration to this proposal. We look forward to working together on what we know will be a first class development. Should you have any questions, comments or require any additional information, please do not hesitate to call. I can be reached at 312-275-3120 or at allen@baumrealty.com.

Presented by:

Accepted by,

_____
Authorized signatory of Landlord
CC:                                                                 Date: _____
Steve Collins – VP Real Estate, Construction, Design

Attachments:
Exhibit A: Prototypical Plan
Exhibit B: Landlord's Work
Exhibit C: Signage Plan

EXHIBIT A
TIDE DRY CLEANERS PROTOTYPE PLAN



EXHIBIT B
LANDLORD'S WORK AND DELIVERY CONDITIONS

Landlord shall, at its sole cost and expense, provide and complete all work at the Premises, with the exception of equipment installation and process piping (steam & condensate lines), in accordance with all applicable codes and Tenant's Construction Documents. The following scope of work is based on existing exterior walls and roof being in place.

INTERIOR WORK
- Storefront access doors and rear service door per Tenant's Construction Documents with hardware as required by building code and ADA requirements. Any storefront modifications will be by the Landlord.
- Floor to bottom of joist clear space needs to be a minimum of 13'.
- Provide demolition of existing interior partitions, ceilings and HVAC distribution.
- Provide two (2) code compliant ADA restrooms (if required by code – Tenant only requires one restroom) per Tenant's Construction Documents.
  - Verify if ADA upgrade is required to meet state and local codes. Toilet and wall hung lavatory or like-new vanity to be in good working order, replace if rust or water deposit stains exist. Floor to be like-new ceramic tile. All accessories per state and local codes to be in place including but not limited to: towel dispenser, toilet paper dispenser, mirror, and grab bars. Hot water heater to be in place for hand sink.
- Provide all 4 demising walls & interior partitions taped sanded and ready for Tenant's wall treatment per Tenant's Construction Documents.
  - Demising walls to include studs, drywall (1 hr. rated), and minimum 3" sound batt insulation to the deck
- Patch, repair and level existing floors, as required, broom clean and ready for floor covering. Control joints, cracks and seams in floor slab to be a minimum to avoid excessive floor preparation. Areas of settling or excessive unevenness to be floated and ready to accept flooring.
- Mechanical system of sufficient configuration and size to adequately heat and cool the leased premises as determined by Tenant's Construction Documents and Tide Dry Cleaners Prototype HVAC Basis for Design which typically consist of the following:
  - Centralized HVAC system with supply and return air duct work and air distribution
    - Historically, the Midwest region HVAC equipment configurations have looked similar to two (2) - ten ton HVAC units in the production area and one (1) - four ton HVAC unit above the lobby. (This will be determined by mechanical engineers final calculations and design.)
  - 'Split' spot cooling system and distribution in the production area
  - An exhaust fan and ducted exhaust system
  - HVAC units and model numbers shall comply with Tenant's Construction Documents
  - All controls for Tenant's space to operate only the RTU's, ducts, diffusers, VAV's, or other related HVAC equipment inside Tenant's space. No other space, corridor or unit to be connected to the "system" for the Tide Dry Cleaners space.
  - Clean and replace filters, check fluids and gases, and balance existing system. Verify thermostat operational and all rooms have adequate supply and return grilles for comfort of working environment with air circulation. Provide age and serial number of units.
  - Landlord to warrant the system for all repairs and replacements for lease term.
- Electric service brought to the Premises according to code and Tenant's Construction Documents. The electrical service panel shall be provided, installed, and energized at the rear of the space per the Tenant's Construction Documents.
  - Electrical services shall be 800 AMP Service to three (3) 300 AMP Panels 3 phase power 120 volt per Tenant's Construction Documents
  - Landlord will install the appropriate number of breakers within each AMP panel as specified in Tenant's Construction Documents
  - All electrical shall be distributed per Tenant's Construction Documents
- Provide gas and domestic water piping within the Premises pursuant to Tenant's Construction Documents
- Landlord to provide One (1) thirty (30) AMP sign circuit to the vicinity of the sign fascia extended to the interior face of the front wall of the Premises at the point above the ceiling for Tenant's sign. All switched legs to be terminated in J box above ceiling's future walls.
- Provide exit/emergency lighting at each egress door
- SPECIAL EQUIPMENT: Landlord to install and pay for the fire alarm system, monitoring, and sprinkler system as required per City Code in conjunction with Tenant's Construction Documents
  - Any enhancements or alterations to the sprinkler or fire alarm system caused directly from Tenant's equipment as required by Code will be the responsibility of Tenant
- Landlord shall complete all interior ceiling work per Tenant's Construction Documents including by not limited to the ceiling grid, tiles, light fixtures and HVAC diffusers.
- Landlord shall provide all finishes, including but not limited to painting and flooring, per Tenant's Construction Documents

- Landlord shall provide millwork per Tenant's Construction Documents
- Landlord shall install Tenant's locker system/automated teller machine (to be decided at a later date which system is preferred) per Tenant's Construction Documents
- Mop sink and all utility sinks will be provided by Landlord per Tenant's Construction Documents
- Landlord shall be responsible for all data and voice cabling per Tenant's Construction Documents.
- Landlord to provide drop ceilings in the areas shown on Tenant's Construction Documents
- Furnish & install hot water heater to provide hot water per Tenant's Construction Documents
- Add electric water/drinking fountain as required by local code

EXTERIOR WORK

- Provide double steel doors measuring 8' in width by 7' tall with a 2' transom in the rear of the space (to be verified by Tenant's design intent drawings.
- In the drive thru area, remove all obstructions.
- Provide a dual lane drive thru with canopy per Tenants Construction Documents.
- Provide necessary curbs, sidewalks, parking, and drives to meet state, local and ADA codes related to accessibility and condition.
- Provide double automatic sliding glass doors for drive thru per Tenant's Construction Documents.
- Install to the interior wall surface of the Premises, a 2 inch domestic water supply line (with said supply line size being subject to approval by Tenant's architect and/or engineer(s).)
- Provide Gas to the Premises in location of Tenant's Construction Documents

Landlord's Work will be completed in a good and workmanlike manner; will comply with all applicable legal, building code, and insurance requirements; will be consistent with standards of construction for first class shopping centers; and will consist of new materials.
Delivery Conditions

Landlord will complete or cause the completion of the following conditions by the Delivery Date:

(a) Landlord will have completed its Work;
(b) Landlord will have approved Tenant's plans and signage,
(c) Landlord will have given Tenant thirty (30) days advance written notice of anticipated completion of its Work;
(d) all permits, certificates, and licenses for all work and occupancy for the Premises will have been obtained,
(e) the certificate of occupancy and all necessary permits for the building will have been issued by appropriate authorities;
(f) Landlord will have delivered actual and exclusive possession of the Premises to Tenant free and clear of all tenancies and occupancies;
(g) all utilities will have been connected and be in adequate supply; and
(h) Landlord will be responsible for the cost and production of Tenant's Construction Documents (Architectural, Mechanical, Plumbing, and Civil if applicable), by a licensed Architect necessary for the Landlord's scope of work; however, Tenant shall have final right to review and approve said Construction Documents; and
(i) Landlord shall bear all costs for impact fees, city fees, tap fees, meter fees, bonds (if applicable), permits and site plan and zoning approval which allows Landlord to seek a permit for Tide Dry Cleaners' operation.

## EXHIBIT C
## TENANT'S SIGNAGE





# EXHIBIT E

IN THE UNITED STATES DISTRICT COURT
NOTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

IN THE MATTER OF

Bond#9163618

PNC Bank, National Association, successor in
Interest by merger to National City Bank, successor
In interest by merger to MidAmerica Bank, FSB

Plaintiff

vs.

Receiver's Bond

Randall Road Joint Venture, and Illinois general
partnership; Chicago Title Land Trust Company,
successor trustee to Amcore Investment Group as
Trustee Under Trust Agreement Date December 15,
1993 and Known as Trust Number 3504; Jeffrey R.
Dunham; Robert R. Dunham; Power Pizza Company
d/b/a Jake's Pizza, an Illinois domestic corporation;
Phoenix Leasing Incorporated, a foreign corporation;

No. 13 cv 07271

Property Address:
124-136 S. Randall Road
Algonquin, Illinois 60102

Defendants,

KNOW ALL MEN BY THESE PRESENTS:

THAT WE, Joshua E. Joseph of Frontline Real Estate Partners, LLC, as
Principal(s)and the Washington International Insurance Company , a New Hampshire
corporation, as Surety, are held and firmly bound unto The United States District
Court Northern District of Illinois, Eastern Division as Obligee(s), in the penal
sum of Seventy Five Thousand and no/100, ($75,000.00 ) DOLLARS, lawful money of
the United States of America, for the payment of which, well and truly to be
made, we bind ourselves, our heirs, legal representatives, successors and
assigns, jointly and severally, firmly by these presents.

Whereas, in the above action and the above Court, Joshua E. Joseph of Frontline
Real Estate Partners, LLC, the Principal(s) has been appointed Receiver(s) of
certain real property located at 124-136 S. Randall Road, Algonquin, IL 60102
with authority and instructions and designated by the court, and has (have) been
directed to give a bond to Obligee in the sum aforesaid, according to law.

NOW THEREFORE, THE CONDITION OF THIS OBLIGATION IS SUCH, that if the said
Principal(s) shall faithfully discharge the duties of Receiver(s), and shall obey
the orders of the Court therein, then this obligation shall be void; otherwise to
remain in full force and virtue.

SIGNED AND SEALED this 9th day December, 2013.

BY:
_____
Joshua E. Joseph

APPROVED

RECEIVED

DEC 1 0 2013

_____, 2013

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

BY: _____
Judge

Washington International Insurance Company

BY: _____
Judith A. McGoogan, Attorney-in-Fact

### NAS SURETY GROUP

NORTH AMERICAN SPECIALTY INSURANCE COMPANY
WASHINGTON INTERNATIONAL INSURANCE COMPANY

#### GENERAL POWER OF ATTORNEY

KNOW ALL MEN BY THESE PRESENTS, THAT North American Specialty Insurance Company, a corporation duly organized and existing under laws of the State of New Hampshire, and having its principal office in the City of Manchester, New Hampshire, and Washington International Insurance Company, a corporation organized and existing under the laws of the State of New Hampshire and having its principal office in the City of Schaumburg, Illinois, each does hereby make, constitute and appoint:

ADAM J. CANTU, JACQUELYN M. NORSTROM, JUDITH A. McGOGGAN,

JOSEFINA ROJO and JOHN P. HARNEY

JOINTLY OR SEVERALLY

Its true and lawful Attorney(s)-in-Fact, to make, execute, seal and deliver, for and on its behalf and as its act and deed, bonds or other writings obligatory in the nature of a bond on behalf of each of said Companies, as surety, on contracts of suretyship as are or may be required or permitted by law, regulation, contract or otherwise, provided that no bond or undertaking or contract or suretyship executed under this authority shall exceed the amount of:

#### FIVE MILLION ($5,000,000.00) DOLLARS

This Power of Attorney is granted and is signed by facsimile under and by the authority of the following Resolutions adopted by the Boards of Directors of both North American Specialty Insurance Company and Washington International Insurance Company at meetings duly called and held on the 9th of May, 2012:

"RESOLVED, that any two of the Presidents, any Managing Director, any Senior Vice President, any Vice President, any Assistant Vice President, the Secretary or any Assistant Secretary be, and each or any of them hereby is authorized to execute a Power of Attorney qualifying the attorney named in the given Power of Attorney to execute on behalf of the Company bonds, undertakings and all contracts of surety, and that each or any of them hereby is authorized to attest to the execution of any such Power of Attorney and to attach therein the seal of the Company; and it is

FURTHER RESOLVED, that the signature of such officers and the seal of the Company may be affixed to any such Power of Attorney or to any certificate relating thereto by facsimile, and any such Power of Attorney or certificate bearing such facsimile signatures or facsimile seal shall be binding upon the Company when so affixed and in the future with regard to any bond, undertaking or contract of surety to which it is attached."

By
Steven P. Anderson, Senior Vice President of Washington International Insurance Company
& Senior Vice President of North American Specialty Insurance Company

By
David M. Layman, Vice President of Washington International Insurance Company
& Vice President of North American Specialty Insurance Company

IN WITNESS WHEREOF, North American Specialty Insurance Company and Washington International Insurance Company have caused their official seals to be hereunto affixed, and these presents to be signed by their authorized officers this 28th day of __August__, 2012 .

North American Specialty Insurance Company
Washington International Insurance Company

State of Illinois
County of Cook } ss:

On this 28th day of __August__, 20 12 , before me, a Notary Public personally appeared __Steven P. Anderson__, Senior Vice President of Washington International Insurance Company and Senior Vice President of North American Specialty Insurance Company and __David M. Layman__, Vice President of Washington International Insurance Company and Vice President of North American Specialty Insurance Company, personally known to me, who being by me duly sworn, acknowledged that they signed the above Power of Attorney as officers of and acknowledged said instrument to be the voluntary act and deed of their respective companies.

"OFFICIAL SEAL"
DONNA D. SKLENS
Notary Public, State of Illinois
My Commission Expires 10/06/2015

Donna D. Sklens, Notary Public

I, __Jeffrey Goldberg__, the duly elected __Assistant Secretary__ of North American Specialty Insurance Company and Washington International Insurance Company, do hereby certify that the above and foregoing is a true and correct copy of a Power of Attorney given by said North American Specialty Insurance Company and Washington International Insurance Company, which is still in full force and effect.

IN WITNESS WHEREOF, I have set my hand and affixed the seals of the Companies this 9th day of December, 20 13 .

Jeffrey Goldberg, Vice President & Assistant Secretary of
Washington International Insurance Company & North American Specialty Insurance Company

State of Illinois
County of Cook

On this ___9th___ day of ___December___ 2013, before me personally appeared
_____Judith A. McGoogan_____ , known to me to be the Attorney-in-fact of
_____Washington International Insurance Company_____ , the corporation that executed the
within instrument, and acknowledged to me that such corporation executed the same.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my official seal, at my office in the
aforesaid county, the day and year in this certificate first above written.

(Seal)

OFFICIAL SEAL
STEPHANIE C ANDERSON
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:02/08/14

_____
(Notary Public)

# EXHIBIT F

RANDA-2     OP ID: DU

**ACORD**

## CERTIFICATE OF LIABILITY INSURANCE

DATE (MM/DD/YYYY)
03/25/2014

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT: If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must be endorsed. If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

| PRODUCER | CONTACT NAME: GEORGE PRATIKAKIS | | |
|---|---|---|---|
| Crandall, Dubow & Harner, Inc. 3175 Commercial Ave., Ste 200 Northbrook, IL 60062 Mike Dubow | PHONE (A/C, No, Ext): | FAX (A/C, No): | |
| | E-MAIL ADDRESS: GEORGEP@TOTINS.COM | | |
| | INSURER(S) AFFORDING COVERAGE | | NAIC # |
| | INSURER A : Society Insurance | | 15261 |
| INSURED     Randall Road Joint Venture LLC Frontline Real Estate Partners 707 Skokie Blvd Suite 580 Northbrook, IL 60062 | INSURER B : | | |
| | INSURER C : | | |
| | INSURER D : | | |
| | INSURER E : | | |
| | INSURER F : | | |

**COVERAGES        CERTIFICATE NUMBER:        REVISION NUMBER:**

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | ADDL INSD | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|
| A | X COMMERCIAL GENERAL LIABILITY | | | 11428323 | 03/15/2014 | 03/15/2015 | EACH OCCURRENCE | $ 1,000,000 |
| | CLAIMS-MADE X OCCUR | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $ 300,000 |
| | | | | | | | MED EXP (Any one person) | $ 5,000 |
| | | | | | | | PERSONAL & ADV INJURY | $ 1,000,000 |
| | GEN'L AGGREGATE LIMIT APPLIES PER: | | | | | | GENERAL AGGREGATE | $ 2,000,000 |
| | POLICY   PRO-JECT   LOC | | | | | | PRODUCTS - COMP/OP AGG | $ 2,000,000 |
| | OTHER: | | | | | | | $ |
| | AUTOMOBILE LIABILITY | | | | | | COMBINED SINGLE LIMIT (Ea accident) | $ |
| | ANY AUTO | | | | | | BODILY INJURY (Per person) | $ |
| | ALL OWNED AUTOS   SCHEDULED AUTOS | | | | | | BODILY INJURY (Per accident) | $ |
| | HIRED AUTOS   NON-OWNED AUTOS | | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | | | | | | | | $ |
| | UMBRELLA LIAB   OCCUR | | | | | | EACH OCCURRENCE | $ |
| | EXCESS LIAB   CLAIMS-MADE | | | | | | AGGREGATE | $ |
| | DED   RETENTION $ | | | | | | | $ |
| | WORKERS COMPENSATION AND EMPLOYERS' LIABILITY        Y/N ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED? (Mandatory in NH) If yes, describe under DESCRIPTION OF OPERATIONS below | N/A | | | | | PER STATUTE   OTH-ER | |
| | | | | | | | E.L. EACH ACCIDENT | $ |
| | | | | | | | E.L. DISEASE - EA EMPLOYEE | $ |
| | | | | | | | E.L. DISEASE - POLICY LIMIT | $ |
| A | PROPERTY | | | 11428323 | 03/15/2014 | 03/15/2015 | BUILDING | 1,700,000 |
| | | | | | | | DED | 2,500 |

DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES (ACORD 101, Additional Remarks Schedule, may be attached if more space is required)

**CERTIFICATE HOLDER**

FRONTLINE REAL ESTATE PARTNERS
707 SKOKIE BLVD., SUITE 580
NORTHBROOK, IL 60062

**CANCELLATION**

SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS.

AUTHORIZED REPRESENTATIVE

*Michael N. Dn*

© 1988-2014 ACORD CORPORATION. All rights reserved.

ACORD 25 (2014/01)        The ACORD name and logo are registered marks of ACORD

**ACORD®**     # CERTIFICATE OF LIABILITY INSURANCE

| | DATE (MM/DD/YYYY) |
|---|---|
| | 02/19/2013 |

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT: If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must be endorsed. If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

| PRODUCER | | CONTACT NAME: | | |
|---|---|---|---|---|
| Illinois Alliance Insurance | | PHONE (A/C, No, Ext): 815-568-7560 | | FAX (A/C, No): |
| 421 E. Grant Highway | | E-MAIL ADDRESS: | | |
| PO Box 236 | | **INSURER(S) AFFORDING COVERAGE** | | NAIC # |
| Marengo     IL   60152 | | INSURER A: Allied Insurance | | |
| INSURED | | INSURER B: | | |
|     RANDALL ROAD JOINT VENTURE | | INSURER C: | | |
|     PO Box 460 | | INSURER D: | | |
| | | INSURER E: | | |
|     Woodstock     IL   60098 | | INSURER F: | | |

| COVERAGES | CERTIFICATE NUMBER: | REVISION NUMBER: |
|---|---|---|

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | ADDL INSR | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|
| A | **GENERAL LIABILITY** | | | | | | EACH OCCURRENCE | $ 2,000,000 |
| | ✓ COMMERCIAL GENERAL LIABILITY | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $ 300,000 |
| |    CLAIMS-MADE ✓ OCCUR | | | | | | MED EXP (Any one person) | $ 5,000 |
| | | X | | ACP7115547070 | 03/15/2013 | 03/15/2014 | PERSONAL & ADV INJURY | $ 2,000,000 |
| | | | | | | | GENERAL AGGREGATE | $ 4,000,000 |
| | GEN'L AGGREGATE LIMIT APPLIES PER: | | | | | | PRODUCTS - COMP/OP AGG | $ 4,000,000 |
| | POLICY   PROJECT   LOC | | | | | | | $ |
| | **AUTOMOBILE LIABILITY** | | | | | | COMBINED SINGLE LIMIT (Ea accident) | $ |
| | ANY AUTO | | | | | | BODILY INJURY (Per person) | $ |
| | ALL OWNED AUTOS   SCHEDULED AUTOS | | | | | | BODILY INJURY (Per accident) | $ |
| | HIRED AUTOS   NON-OWNED AUTOS | | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | | | | | | | | $ |
| | UMBRELLA LIAB   OCCUR | | | | | | EACH OCCURRENCE | $ |
| | EXCESS LIAB   CLAIMS-MADE | | | | | | AGGREGATE | $ |
| | DED   RETENTION $ 10,000 | | | | | | | $ |
| | **WORKERS COMPENSATION AND EMPLOYERS' LIABILITY**   Y/N | | | | | | WC STATU-TORY LIMITS   OTHER | |
| | ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED? [N] (Mandatory in NH) | N/A | | | | | E.L. EACH ACCIDENT | $ |
| | | | | | | | E.L. DISEASE - EA EMPLOYEE | $ |
| | If yes, describe under DESCRIPTION OF OPERATIONS below | | | | | | E.L. DISEASE - POLICY LIMIT | $ |

DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES (Attach ACORD 101, Additional Remarks Schedule, if more space is required)
CERTIFICATE HOLDER IS ADDITIONAL INSURED:

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
|    PNC Bank, NA   ISAOA/ATIMA | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS. |
|    Mailstop: P7-PFSC-04-V | |
|    500 First Avenue | AUTHORIZED REPRESENTATIVE |
|    Pittsburgh, PA 15219 | |

ACORD 25 (2010/05)      The ACORD name and logo are registered marks of ACORD     © 1988-2010 ACORD CORPORATION. All rights reserved.

**ACORD** EVIDENCE OF COMMERCIAL PROPERTY INSURANCE | DATE (MM/DD/YYYY) 02/19/2013

THIS IS EVIDENCE THAT INSURANCE AS IDENTIFIED BELOW HAS BEEN ISSUED, IS IN FORCE, AND CONVEYS ALL THE RIGHTS AND PRIVILEGES AFFORDED UNDER THE POLICY.

| PRODUCER NAME, CONTACT PERSON AND ADDRESS | PHONE (A/C, No, Ext): 815-568-7560 | COMPANY NAME AND ADDRESS | NAIC NO: |
|---|---|---|---|
| Pat Signore | FAX (A/C, No): 815-568-7606 | ALLIED INSURANCE | |
| | E-MAIL ADDRESS: | | |
| Illinois Alliance Insurance Agency, Inc. 421 E. Grant Hwy. PO Box 236 Marengo, IL 60152 | | | |

| CODE: | SUB CODE: | |
|---|---|---|
| AGENCY CUSTOMER ID #: | | IF MULTIPLE COMPANIES, COMPLETE SEPARATE FORM FOR EACH |

| NAMED INSURED AND ADDRESS | LOAN NUMBER | POLICY NUMBER |
|---|---|---|
| RANDALL ROAD JOINT VENTURE | | ACP7115547070 |
| PO BOX 460 | EFFECTIVE DATE 03/15/2013 | EXPIRATION DATE 03/15/2014 |
| WOODSTICK, IL 60098 | | CONTINUED UNTIL ☑ TERMINATED IF CHECKED |
| ADDITIONAL NAMED INSURED(S) | THIS REPLACES PRIOR EVIDENCE DATED: | |

PROPERTY INFORMATION (Use additional sheets if more space is required)

LOCATION/DESCRIPTION
124-136 S. RANDALL RAOD ALGONQUIN, IL 60102

| COVERAGE INFORMATION | CAUSE OF LOSS FORM | BASIC | | BROAD | ☑ SPECIAL | | OTHER | | |
|---|---|---|---|---|---|---|---|---|---|
| COMMERCIAL PROPERTY COVERAGE AMOUNT OF INSURANCE: $ 2,080,000.00 | | | | | | | DED: 1000 | | |
| | | YES | NO | | | | | | |
| BUSINESS INCOME / RENTAL VALUE | | ☑ | | IF YES, | LIMIT: | 12 Actual Loss Sustained | # of months: | | |
| BLANKET COVERAGE | | | ☑ | If YES, indicate amount of insurance on properties identified above: $ | | | | | |
| TERRORISM COVERAGE | | ☑ | | Attach signed Disclosure Notice / DEC | | | | | |
| IS COVERAGE PROVIDED FOR "CERTIFIED ACTS" ONLY? | | ☑ | | IF YES, | SUB LIMIT: | | DED: | | |
| IS COVERAGE A STAND ALONE POLICY? | | | ☑ | IF YES, | LIMIT: | | DED: | | |
| DOES COVERAGE INCLUDE DOMESTIC TERRORISM? | | ☑ | | IF YES, | SUB LIMIT: | | DED: | | |
| COVERAGE FOR MOLD | | | ☑ | IF YES, | LIMIT: | | DED: | | |
| MOLD EXCLUSION (If "YES", specify organization's form used) | | ☑ | | PB2999 0411 | | | | | |
| REPLACEMENT COST | | ☑ | | | | | | | |
| AGREED AMOUNT | | | ☑ | | | | | | |
| COINSURANCE | | | ☑ | IF YES, | % | | | | |
| EQUIPMENT BREAKDOWN (If Applicable) | | ☑ | | IF YES, | LIMIT: 2080000 | | DED: 1000 | | |
| LAW AND ORDINANCE - Coverage for loss to undamaged portion of building | | ☑ | | IF YES, | LIMIT: 2080000 | | DED: 1000 | | |
| - Demolition Costs | | | ☑ | IF YES, | LIMIT: 50000 | | DED: 1000 | | |
| - Incr. Cost of Construction | | | ☑ | IF YES, | LIMIT: 500000 | | DED: 1000 | | |
| EARTHQUAKE (If Applicable) | | | ☑ | IF YES, | LIMIT: | | DED: | | |
| FLOOD (If Applicable) | | | ☑ | IF YES, | LIMIT: | | DED: | | |
| WIND / HAIL (If Separate Policy) | | | ☑ | IF YES, | LIMIT: | | DED: | | |
| PERMISSION TO WAIVE SUBROGATION PRIOR TO LOSS | | ☑ | | | | | | | |

REMARKS - Including Special Conditions (Use additional sheets if more space is required)

CANCELLATION

THE POLICY IS SUBJECT TO THE PREMIUMS, FORMS, AND RULES IN EFFECT FOR EACH POLICY PERIOD. SHOULD THE POLICY BE TERMINATED, THE COMPANY WILL GIVE THE ADDITIONAL INTEREST IDENTIFIED BELOW ___30___ DAYS WRITTEN NOTICE, AND WILL SEND NOTIFICATION OF ANY CHANGES TO THE POLICY THAT WOULD AFFECT THAT INTEREST, IN ACCORDANCE WITH THE POLICY PROVISIONS OR AS REQUIRED BY LAW.

ADDITIONAL INTEREST

| NAME AND ADDRESS | LENDER SERVICING AGENT NAME AND ADDRESS |
|---|---|
| PNC Bank, NA ISAOA/ATIMA Mailstop: P7-PFSC-04-V 500 First Avenue Pittsburgh, PA 15219 | |

| ☑ MORTGAGEE ☑ LOSS PAYEE | AUTHORIZED REPRESENTATIVE Pat Signore |
|---|---|

ACORD 28 (2003/10) | © ACORD CORPORATION 2003

# EXHIBIT G

FROM THE OFFICE OF:
WILLIAM W. Le FEW
McHENRY COUNTY TREASURER

**REAL ESTATE TAX BILL**
**1ST INSTALLMENT COUPON PAYMENT**

ASSESSED TO: AMCORE TR CO TR 3504
PIN: 19-30-400-008

MAKE CHECKS PAYABLE TO: McHENRY COUNTY COLLECTOR

**\*\*DUPLICATE\*\***

CENTERVILLE PROP
2380 ESPLANADE DR
STE 300
ALGONQUIN IL 60102-5451

**1ST INSTALLMENT FOR 2012**
**DUE BY 06/05/2013** — $39,839.76

**1-2012**
INTEREST
COSTS
TOTAL PAID — Paid on 05/30/2013

PAID BY: CHECK____ CASH____ MAIL____ CREDIT CARD____   126727

1930400008000398397614

---

FROM THE OFFICE OF:
WILLIAM W. Le FEW
McHENRY COUNTY TREASURER

**REAL ESTATE TAX BILL**
**2ND INSTALLMENT COUPON PAYMENT**

ASSESSED TO: AMCORE TR CO TR 3504
PIN: 19-30-400-008

MAKE CHECKS PAYABLE TO: McHENRY COUNTY COLLECTOR

**\*\*DUPLICATE\*\***

CENTERVILLE PROP
2380 ESPLANADE DR
STE 300
ALGONQUIN IL 60102-5451

**2ND INSTALLMENT FOR 2012**
**DUE BY 09/05/2013** — $39,839.76

**2-2012**
INTEREST
COSTS
TOTAL PAID — Paid on 08/29/2013

PAID BY: CHECK____ CASH____ MAIL____ CREDIT CARD____

1930400008000398397626

---

| Taxing Body | Rate | Percent | Tax This Year | Tax Last Year |
|---|---|---|---|---|
| MCHENRY COUNTY | 0.881056 | 8.19 | $7,322.15 | $7,239.06 |
| MCHENRY COUNTY PENSION | 0.114753 | 1.20 | $853.67 | $622.40 |
| MCHENRY CO CONSV | 0.248082 | 2.59 | $2,061.73 | $1,889.27 |
| COLLEGE DISTRICT 509 ELGIN | 0.525487 | 5.48 | $4,367.14 | $4,309.00 |
| COLLEGE DISTRICT 509 ELGIN PENSION | 0.007426 | 0.08 | $61.72 | $48.69 |
| SCHOOL DIST 300 | 5.443703 | 56.78 | $45,241.54 | $42,152.78 |
| SCHOOL DIST 300 PENSION | 0.161400 | 1.68 | $1,341.31 | $1,798.00 |
| ALG LITH FIRE DIST | 0.738112 | 7.70 | $6,134.20 | $5,650.69 |
| ALG LITH FIRE DIST PENSION | 0.088620 | 0.92 | $736.49 | $697.76 |
| ALGONQUIN LIBRARY | 0.476284 | 4.97 | $3,958.07 | $3,726.97 |
| ALGONQUIN LIBRARY PENSION | 0.048024 | 0.50 | $399.11 | $432.97 |
| ALGONQUIN TOWNSHIP | 0.074157 | 0.77 | $616.29 | $598.17 |
| ALGONON TWP RD & BR | 0.154715 | 1.61 | $1,285.78 | $1,259.29 |
| ALGONON TWP RD & BR PENSION | 0.007953 | 0.08 | $66.10 | $64.37 |
| ALGONQUIN VILLAGE | 0.384243 | 4.01 | $3,193.31 | $3,203.37 |
| ALGONQUIN VILLAGE PENSION | 0.233544 | 2.44 | $1,940.91 | $1,955.15 |
| **Totals** | **9.587629** | | **$79,679.52** | **$76,142.04** |

MCHENRY COUNTY 2012 REAL ESTATE TAX BILL
LEGAL DESCRIPTION:
DOC 93R0081755
LT 2
KAPERS WEST SUB

ASSESSED TO:
AMCORE TR CO TR 3504
MAIL TO:                                    126727
CENTERVILLE PROP
2380 ESPLANADE DR
STE 300
ALGONQUIN IL 60102-5451

If paid after due date, pay amount below which includes 1.5% per month penalty: FIRST INSTALLMENT   SECOND INSTALLMENT

| | FIRST INSTALLMENT | SECOND INSTALLMENT |
|---|---|---|
| 06/06 - 07/05 | 40,437.36 | |
| 07/06 - 08/05 | 41,034.95 | |
| 08/06 - 09/05 | 41,632.55 | |
| 09/06 - 10/05 | 42,230.15 | 40,437.36 |
| 10/06 - 10/25 | 42,827.74 | 41,044.95 |

PIN
19-30-400-008

| Township | Tax Code | Property Class |
|---|---|---|
| AQ | 19005 | 0060 |
| Sub Lot | Acres | |
| | 1.38 | |

| 1st Install | 2nd Install |
|---|---|
| $39,839.76 | $39,839.76 |
| Interest | Interest |
| Costs | Costs |
| Total Paid | Total Paid |
| Paid on 05/30/2013 | Paid on 08/29/2013 |

| | | |
|---|---|---|
| Fair Cash Value | | 2,434,050 |
| S/A Value | | 892,182 |
| S/A Multiplier | X | .9094 |
| S/A Equalized Value | = | 811,350 |
| Brd. of Review Value | | 811,350 |
| Brd. of Review Multiplier | X | 1.0000 |
| Brd. of Review EQ Value | = | 811,350 |
| Home Improv./Vet Exemptions | | 0 |
| State Multiplier | X | 1.0243 |
| State Equalized Value | = | 831,066 |
| Farmland and Bldgs. Value | + | 0 |
| Total Amt. Prior to Exemptions | = | 831,066 |
| Annual Homestead Exemptions- | | 0 |
| Sr. Freeze Abated Amount | - | 0 |
| Elderly Homestead Exemption | - | 0 |
| Disabled Vet Homestead Ex | - | 0 |
| Disabled Person Exemption | - | 0 |
| Returning Veteran Exemption | - | 0 |
| Net Taxable Amount | = | 831,066 |
| Local Tax Rate | X | 9.587629 |
| Total Current Year Tax Due | = | **$79,679.52** |

# EXHIBIT H

124-136 S Randall Rd, Algonquin (124-136r)

## Income Statement

Period = Jan 2014-Mar 2014

Book = Cash ; Tree = ysi_is

| | Period to Date | % | Year to Date | % |
|---|---|---|---|---|
| **OPERATING INCOME** | | | | |
| | | | | |
| RENTAL REVENUE | | | | |
| Rent | 29,469.00 | 0.00 | 29,469.00 | 0.00 |
| Prepaid Rent | 8,981.87 | 0.00 | 8,981.87 | 0.00 |
| TOTAL RENTAL REVENUE | 38,450.87 | 0.00 | 38,450.87 | 0.00 |
| | | | | |
| RECOVERABLE INCOME | | | | |
| Estimated CAM | 5,451.00 | 0.00 | 5,451.00 | 0.00 |
| Estimated Real Estate Taxes | 12,219.00 | 0.00 | 12,219.00 | 0.00 |
| TOTAL RECOVERABLE INCOME | 17,670.00 | 0.00 | 17,670.00 | 0.00 |
| | | | | |
| OTHER INCOME | | | | |
| Misc Income | 68.49 | 0.00 | 68.49 | 0.00 |
| TOTAL OTHER INCOME | 68.49 | 0.00 | 68.49 | 0.00 |
| | | | | |
| **TOTAL INCOME** | 56,189.36 | 0.00 | 56,189.36 | 0.00 |
| | | | | |
| | | | | |
| **OPERATING EXPENSES** | | | | |
| | | | | |
| NON RECOVERABLE OPERATING EXPENSES | | | | |
| Tenant Space R&M | 281.46 | 0.00 | 281.46 | 0.00 |
| TOTAL NON-RECOVERABLE R&M | 281.46 | 0.00 | 281.46 | 0.00 |
| | | | | |
| NON-RECOVERABLE UTILITIES | | | | |
| Gas | 1,319.04 | 0.00 | 1,319.04 | 0.00 |
| Electricity | 225.20 | 0.00 | 225.20 | 0.00 |
| TOTAL NON-RECOVERABLE UTILITIES | 1,544.24 | 0.00 | 1,544.24 | 0.00 |
| | | | | |
| NON-RECOVERABLE G&A | | | | |
| Other Professional Fees | 3,833.06 | 0.00 | 3,833.06 | 0.00 |
| General & Admin Expense | 174.16 | 0.00 | 174.16 | 0.00 |
| Permit & License | 40.00 | 0.00 | 40.00 | 0.00 |
| Receiver Bond | 750.00 | 0.00 | 750.00 | 0.00 |
| Bank Fees | 81.76 | 0.00 | 81.76 | 0.00 |
| TOTAL NON-RECOVERABLE G&A | 4,878.98 | 0.00 | 4,878.98 | 0.00 |
| | | | | |
| **TOTAL NON RECOVERABLE EXPENSES** | 6,704.68 | 0.00 | 6,704.68 | 0.00 |
| | | | | |
| **RECOVERABLE EXPENSES** | | | | |
| | | | | |
| REPAIRS & MAINTENANCE | | | | |
| Snow Removal | 5,528.75 | 0.00 | 5,528.75 | 0.00 |
| Trash Removal | 1,829.44 | 0.00 | 1,829.44 | 0.00 |
| Plumbing R&M | 684.60 | 0.00 | 684.60 | 0.00 |
| Miscellaneous R&M | 175.40 | 0.00 | 175.40 | 0.00 |
| TOTAL REPAIRS & MAINTENANCE | 8,218.19 | 0.00 | 8,218.19 | 0.00 |
| | | | | |
| UTILITIES | | | | |
| Electricity | 410.58 | 0.00 | 410.58 | 0.00 |
| Water/Sewer | 1,382.37 | 0.00 | 1,382.37 | 0.00 |
| TOTAL UTILITIES | 1,792.95 | 0.00 | 1,792.95 | 0.00 |
| | | | | |
| INSURANCE | | | | |
| Insurance - Other | 750.00 | 0.00 | 750.00 | 0.00 |
| TOTAL INSURANCE | 750.00 | 0.00 | 750.00 | 0.00 |
| | | | | |
| **TOTAL RECOVERABLE EXPENSES** | 10,761.14 | 0.00 | 10,761.14 | 0.00 |
| | | | | |
| **TOTAL OPERATING EXPENSES** | 17,465.82 | 0.00 | 17,465.82 | 0.00 |
| | | | | |
| **NET OPERATING INCOME** | 38,723.54 | 0.00 | 38,723.54 | 0.00 |

124-136 S Randall Rd, Algonquin (124-136r)

**Income Statement**

Period = Jan 2014-Mar 2014
Book = Cash ; Tree = ysl_is

| | Period to Date | % | Year to Date | % |
|---|---|---|---|---|
| NET INCOME (LOSS) | 38,723.54 | 0.00 | 38,723.54 | 0.00 |

**124-136 S Randall Rd Property**
**Bank Reconciliation Report**
**03/31/2014**
4628440747

04/08/2014

| | | | |
|---|---|---|---|
| Balance Per Bank Statement as of 03/31/2014 | | 30,220.06 | |
| Less: | Outstanding Checks | 993.52 | |
| | Reconciled Bank Balance | | 29,226.54 |
| | | | |
| Balance per GL as of 03/31/2014 | | 38,653.54 | |
| Plus/Minus: | Book Reconciling Items | -9,427.00 | |
| | Reconciled Balance Per G/L | | 29,226.54 |

Difference        0.00

**Cleared Items :**

**Cleared Checks**

| Date | Tran # | Notes | Amount | Date Cleared |
|---|---|---|---|---|
| 02/19/2014 | 1014 | nicor - Nicor Gas Co. | 709.81 | 03/31/2014 |
| 03/05/2014 | 1015 | backflow - Backflow Testing Services, Inc | 260.00 | 03/31/2014 |
| 03/05/2014 | 1016 | villalgo - Village of Algonquin | 421.74 | 03/31/2014 |
| 03/11/2014 | 1017 | elitelawn - Elite Lawncare | 2,224.00 | 03/31/2014 |
| 03/18/2014 | 1018 | comed - Commonwealth Edison | 67.87 | 03/31/2014 |
| 03/18/2014 | 1019 | flrcmana - FL RC Management, LLC | 274.28 | 03/31/2014 |
| 03/18/2014 | 1020 | nicor - Nicor Gas Co. | 519.23 | 03/31/2014 |
| **Total** | **Cleared Checks** | | **4,586.93** | |

**Cleared Deposits**

| Date | Tran # | Notes | Amount | Date Cleared |
|---|---|---|---|---|
| 03/05/2014 | 9 | | 12,164.00 | 03/31/2014 |
| 03/10/2014 | 10 | | 3,717.00 | 03/31/2014 |
| 03/10/2014 | 11 | | 5,000.00 | 03/31/2014 |
| 03/18/2014 | 12 | | 7,567.00 | 03/31/2014 |
| **Total** | **Cleared Deposits** | | **28,448.00** | |

## 124-136 S Randall Rd Property
### Bank Reconciliation Report
### 03/31/2014
4628440747

04/08/2014

**Cleared Other Items**

| Date | Tran # | Notes | Amount | Date Cleared |
|---|---|---|---|---|
| 03/31/2014 | JE 1675 | Trsfr security deposits to corr bank acct | -7,567.00 | 03/31/2014 |
| 03/31/2014 | JE 1677 | Bank Fees | -41.19 | 03/31/2014 |
| **Total** | **Cleared Other Items** | | **-7,608.19** | |

Corporate Business Account Statement

Account number: 46-2844-0747

Page 1 of 2

For the period 03/01/2014 to 03/31/2014

Number of enclosures: 0

Tax ID Number: 27-1986801

FRONTLINE REAL ESTATE
PARTNERS LLC
707 SKOKIE BLVD STE 580
NORTHBROOK IL 60062-2855

☎ For Client Services:
Call 1-800-669-1518

🖥 Visit us at PNC.com/treasury

✉ Write to: Treas Mgmt Client Care
One Financial Parkway
Locator Z1-Yb42-03-1
Kalamazoo , MI 49009

## Account Summary Information

### Balance Summary

| | Beginning balance | Deposits and other credits | Checks and other debits | Ending balance |
|---|---|---|---|---|
| | 13,947.18 | 20,881.00 | 4,608.12 | 30,220.06 |

| Deposits and Other Credits Description | Items | Amount | Checks and Other Debits Description | Items | Amount |
|---|---|---|---|---|---|
| Deposits | 2 | 20,881.00 | Checks | 7 | 4,566.93 |
| National Lockbox | 0 | 0.00 | Returned Items | 0 | 0.00 |
| ACH Credits | 0 | 0.00 | ACH Debits | 0 | 0.00 |
| Funds Transfers In | 0 | 0.00 | Funds Transfers Out | 0 | 0.00 |
| Trade Services | 0 | 0.00 | Trade Services | 0 | 0.00 |
| Investments | 0 | 0.00 | Investments | 0 | 0.00 |
| Zero Balance Transfers | 0 | 0.00 | Zero Balance Transfers | 0 | 0.00 |
| Adjustments | 0 | 0.00 | Adjustments | 1 | 41.19 |
| Other Credits | 2 | 20,881.00 | Other Debits | 8 | 4,608.12 |
| Total | 2 | 20,881.00 | Total | | |

### Ledger Balance

| Date | Ledger balance | Date | Ledger balance | Date | Ledger balance |
|---|---|---|---|---|---|
| 03/01 | 13,947.18 | 03/17 | 33,346.63 | 03/26 | 30,780.48 |
| 03/10 | 24,889.63 | 03/19 | 31,122.63 | 03/31 | 30,220.06 |
| 03/11 | 24,629.63 | 03/25 | 30,848.35 | | |

## Deposits and Other Credits

### Deposits

2 transactions for a total of $ 20,881.00

| Date posted | Amount | Transaction description | Reference number |
|---|---|---|---|
| 03/10 | 12,164.00 | Deposit | 033949216 |
| 03/17 | 8,717.00 | Deposit | 031759074 |

## Checks and Other Debits

### Checks and Substitute Checks

7 transactions for a total of $ 4,566.93

| Date posted | Check number | Amount | Reference number | Date posted | Check number | Amount | Reference number | Date posted | Check number | Amount | Reference number |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 03/10 | 1014 | 799.81 | 096419765 | 03/19 | 1017 | 2,224.00 | 090133115 | 03/31 | 1020 | 519.23 | 089177991 |
| 03/10 | 1016 | 421.74 | 096523000 | 03/25 | 1019 | 274.28 | 089723661 | | | | |
| 03/11 | 1015 | 260.00 | 089104527 | 03/26 | 1018 | 67.87 | 090687228 | | | | |

Corporate Business Account Statement

FRONTLINE REAL ESTATE
PARTNERS LLC

For the period 03/01/2014 to 03/31/2014

Account number:       46-2844-0747

Page 2 of 2

| Checks and Other Debits | | *- continued* | |
|---|---|---|---|
| Other Debits | | 1 transaction for a total of $ 41.19 | |
| Date posted | Amount | Transaction description | Reference number |
| 03/31 | 41.19 | Corporate Account Analysis Charge | 000000000000039495 |

**124 136 Randall Rd - Sec Dep**
**Bank Reconciliation Report**
**03/31/2014**
50-50076593

04/08/2014

| | | |
|---|---|---|
| Balance Per Bank Statement as of 03/31/2014 | 7,667.00 | |
| Reconciled Bank Balance | | 7,667.00 |
| | | |
| Balance per GL as of 03/31/2014 | 7,667.00 | |
| Reconciled Balance Per G/L | | 7,667.00 |
| | | |
| Difference | | 0.00 |

# FIRSTMERIT.
Bank

FirstMerit Bank, N.A.
295 FirstMerit Circle
Akron Ohio 44307-2359

Page 1 of 2

Statement Period
Mar 13, 2014 to
Mar 31, 2014
Primary Account
50 5007 6593

Questions?
1-888-283-2303

FL RC MANAGEMENT LLC
124 136 S RANDALL RD PROPERTY
707 SKOKIE BLVD STE 580
NORTHBROOK IL 60062

Security Deposit Acct

A

78847 - 31

## Summary of Accounts

### Deposit Accounts

| | | |
|---|---|---|
| REALITY BUSINESS PRO | 50 5007 6593 | 7,567.00 |
| Total Deposit Accounts | | 7,567.00 |

**REALITY BUSINESS PRO**
**50 5007 6593**

FL RC MANAGEMENT LLC
124 136 S RANDALL RD PROPERTY

### Account Summary

| | |
|---|---|
| Beginning Balance as of Mar 13, 2014 | 0.00 |
| 1    Deposits and Credits | 7,567.00 |
| Ending Balance as of Mar 31, 2014 | 7,567.00 |

### Other Transactions

| Date | Description | Withdrawals | Deposits |
|---|---|---|---|
| Mar 19 | DEPOSIT | | 7,567.00 |

### Daily Balance Information

| Date | Balance | Date | Balance |
|---|---|---|---|
| Mar 13 | 0.00 | Mar 19 | 7,567.00 |

**124-136 S Randall Rd Property**
**Bank Reconciliation Report**
**02/28/2014**
4628440747

03/17/2014

| | | | |
|---|---|---|---|
| Balance Per Bank Statement as of 02/28/2014 | | 13,947.18 | |
| Less: | Outstanding Checks | 799.81 | |
| | Reconciled Bank Balance | | 13,147.37 |
| | | | |
| Balance per GL as of 02/28/2014 | | 13,147.37 | |
| | Reconciled Balance Per G/L | | 13,147.37 |
| | | | |
| Difference | | | 0.00 |

**Cleared Items :**

**Cleared Checks**

| Date | Tran # | Notes | Amount | Date Cleared |
|---|---|---|---|---|
| 01/21/2014 | 1000 | aasecur - A&A Security Safety Suppy, Inc | 281.48 | 02/28/2014 |
| 01/21/2014 | 1001 | allied-933 - Allied Waste Services #933 | 453.33 | 02/28/2014 |
| 01/21/2014 | 1002 | chicagotitle - Chicago Title Land Trust Company | 75.00 | 02/28/2014 |
| 01/21/2014 | 1003 | comed - Commonwealth Edison | 85.09 | 02/28/2014 |
| 01/21/2014 | 1004 | elitelawn - Elite Lawncare | 2,362.75 | 02/28/2014 |
| 01/21/2014 | 1005 | fronreal - Frontline Real Estate Partners, LLC | 4,508.06 | 02/28/2014 |
| 01/21/2014 | 1006 | mesifine - Mesirow Financial | 750.00 | 02/28/2014 |
| 01/30/2014 | 1007 | comed - Commonwealth Edison | 205.29 | 02/28/2014 |
| 01/30/2014 | 1008 | villalgo - Village of Algonquin | 781.00 | 02/28/2014 |
| 01/30/2014 | 1009 | allied-933 - Allied Waste Services #933 | 461.39 | 02/28/2014 |
| 02/10/2014 | 1010 | allied-933 - Allied Waste Services #933 | 914.72 | 02/28/2014 |
| 02/10/2014 | 1011 | comed - Commonwealth Edison | 205.29 | 02/28/2014 |
| 02/10/2014 | 1012 | villalgo - Village of Algonquin | 648.23 | 02/28/2014 |
| 02/19/2014 | 1013 | elitelawn - Elite Lawncare | 942.00 | 02/28/2014 |

**Total   Cleared Checks**                                                **12,674.61**

**Cleared Deposits**

| Date | Tran # | Notes | Amount | Date Cleared |
|---|---|---|---|---|
| 01/07/2014 | 1 | | 3,365.00 | 02/28/2014 |
| 01/10/2014 | 2 | | 3,700.00 | 02/28/2014 |
| 01/13/2014 | 3 | | 4,946.00 | 02/28/2014 |
| 01/13/2014 | 4 | | 404.36 | 02/28/2014 |
| 01/15/2014 | 5 | | 2,083.00 | 02/28/2014 |

124-136 S Randall Rd Property
Bank Reconciliation Report
02/28/2014
4628440747

03/17/2014

### Cleared Deposits

| Date | Tran # | Notes | Amount | Date Cleared |
|------|--------|-------|--------|--------------|
| 01/28/2014 | 6 | | 3,700.00 | 02/28/2014 |
| 02/04/2014 | 7 | | 4,846.00 | 02/28/2014 |
| 02/06/2014 | 8 | | 3,518.00 | 02/28/2014 |
| **Total** | **Cleared Deposits** | | **26,662.36** | |

### Cleared Other Items

| Date | Tran # | Notes | Amount | Date Cleared |
|------|--------|-------|--------|--------------|
| 02/28/2014 | JE 1574 | Bank Fees | -40.57 | 02/28/2014 |
| **Total** | **Cleared Other Items** | | **-40.57** | |

# Corporate Business Account Statement

For the period 02/01/2014 to 02/28/2014

FRONTLINE REAL ESTATE
PARTNERS LLC
707 SKOKIE BLVD STE 580
NORTHBROOK IL 60062-2855

Account number: 46-2844-0747

Page 1 of 2

Number of enclosures: 0
Tax ID Number: 27-1986801

☏ For Client Services:
Call 1-800-669-1518

🖳 Visit us at PNC.com/treasury

✉ Write to: Treas Mgmt Client Care
One Financial Parkway
Locator Z1-Yb42-03-1
Kalamazoo , MI 49009

## Account Summary Information

### Balance Summary

| | Beginning balance | Deposits and other credits | Checks and other debits | Ending balance |
|---|---|---|---|---|
| | 5,981.67 | 12,164.00 | 4,198.49 | 13,947.18 |

| Deposits and Other Credits | | | Checks and Other Debits | | |
|---|---|---|---|---|---|
| Description | Items | Amount | Description | Items | Amount |
| Deposits | 2 | 12,164.00 | Checks | 7 | 4,157.92 |
| National Lockbox | 0 | 0.00 | Returned Items | 0 | 0.00 |
| ACH Credits | 0 | 0.00 | ACH Debits | 0 | 0.00 |
| Funds Transfers In | 0 | 0.00 | Funds Transfers Out | 0 | 0.00 |
| Trade Services | 0 | 0.00 | Trade Services | 0 | 0.00 |
| Investments | 0 | 0.00 | Investments | 0 | 0.00 |
| Zero Balance Transfers | 0 | 0.00 | Zero Balance Transfers | 0 | 0.00 |
| Adjustments | 0 | 0.00 | Adjustments | 0 | 0.00 |
| Other Credits | 0 | 0.00 | Other Debits | 1 | 40.57 |
| Total | 2 | 12,164.00 | Total | 8 | 4,198.49 |

### Ledger Balance

| Date | Ledger balance | Date | Ledger balance | Date | Ledger balance |
|---|---|---|---|---|---|
| 02/01 | 5,981.67 | 02/06 | 4,533.99 | 02/18 | 14,929.75 |
| 02/03 | 5,776.38 | 02/10 | 16,697.99 | 02/26 | 13,987.75 |
| 02/04 | 4,995.38 | 02/14 | 16,049.76 | 02/28 | 13,947.18 |

## Deposits and Other Credits

### Deposits

2 transactions for a total of $ 12,164.00

| Date posted | Amount | Transaction description | Reference number |
|---|---|---|---|
| 02/10 | 8,646.00 | Deposit | 030884182 |
| 02/10 | 3,518.00 | Deposit | 030884187 |

## Checks and Other Debits

### Checks and Substitute Checks

7 transactions for a total of $ 4,157.92

| Date posted | Check number | Amount | Reference number | Date posted | Check number | Amount | Reference number | Date posted | Check number | Amount | Reference number |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 02/03 | 1007 | 205.29 | 090140908 | 02/14 | 1012 | 648.23 | 090214253 | 02/26 | 1013 | 942.00 | 096646105 |
| 02/04 | 1008 | 781.00 | 095185914 | 02/18 | 1010 | 914.72 | 090734772 | | | | |
| 02/06 | 1009 | 461.39 | 089077067 | 02/18 | 1011 | 205.29 | 090629933 | | | | |

# Corporate Business Account Statement

FRONTLINE REAL ESTATE
PARTNERS LLC

For the period 02/01/2014 to 02/28/2014

Account number:  46-2844-0747

Page 2 of 2

## Checks and Other Debits   - continued

### Other Debits   1 transaction for a total of $ 40.57

| Date posted | Amount | Transaction description | Reference number |
|---|---|---|---|
| 02/28 | 40.57 | Corporate Account Analysis Charge | 000000000000039194 |

4/8/2014 4:36 PM

124-136 S Randall Rd, Algonquin (124-136r)

## Receipt Register

Period = Jan 2014→Mar 2014

| Control | Batch | Period | Date | Person | Property | Account | Amount | Reference | Notes |
|---|---|---|---|---|---|---|---|---|---|
| 6107 | 1643 | 01-2014 | 1/7/2014 | CPR - Cell Phone Repair(cellphon) | 124-136r | | 3,365.00 | | |
| 6201 | 1678 | 01-2014 | 1/10/2014 | Atkinson Eye Care - RRJV(atkinson) | 124-136r | | 3,700.00 | | |
| 6355 | 1710 | 01-2014 | 1/13/2014 | Clean & Press(cleanpre) | 124-136r | | 4,946.00 | | |
| 6363 | 1716 | 01-2014 | 1/13/2014 | Clean & Press(cleanpre) | 124-136r | | 404.36 | | |
| 6381 | 1724 | 01-2014 | 1/15/2014 | New Clique, LLC(newcliqu) | 124-136r | | 2,083.00 | | |
| 6793 | 1813 | 02-2014 | 1/28/2014 | Atkinson Eye Care - RRJV(atkinson) | 124-136r | | 3,700.00 | | |
| 6860 | 1831 | 02-2014 | 2/4/2014 | Clean & Press(cleanpre) | 124-136r | | 4,946.00 | | |
| 6963 | 1864 | 02-2014 | 2/6/2014 | CPR - Cell Phone Repair(cellphon) | 124-136r | | 3,518.00 | | |
| 7921 | 2077 | 03-2014 | 3/5/2014 | CPR - Cell Phone Repair(cellphon) | 124-136r | | 3,518.00 | | |
| 7922 | 2077 | 03-2014 | 3/5/2014 | Clean & Press(cleanpre) | 124-136r | | 4,946.00 | | |
| 7923 | 2077 | 03-2014 | 3/5/2014 | Atkinson Eye Care - RRJV(atkinson) | 124-136r | | 3,700.00 | | |
| 8168 | 2139 | 03-2014 | 3/10/2014 | El Fuego Tacos & Burritos(elfuego) | 124-136r | | 3,717.00 | | |
| 8194 | 2154 | 03-2014 | 3/10/2014 | El Fuego Tacos & Burritos(elfuego) | 124-136r | | 5,000.00 | | |
| 8347 | 2202 | 03-2014 | 3/18/2014 | Atkinson Eye Care - RRJV(atkinson) | 124-136r | | 1,725.00 | | Security Deposit |
| 8348 | 2202 | 03-2014 | 3/18/2014 | New Clique, LLC(newcliqu) | 124-136r | | 2,453.00 | | Security Deposit |
| 8349 | 2202 | 03-2014 | 3/18/2014 | CPR - Cell Phone Repair(cellphon) | 124-136r | | 767.00 | | Security Deposit |
| 8350 | 2202 | 03-2014 | 3/18/2014 | El Fuego Tacos & Burritos(elfuego) | 124-136r | | 2,622.00 | | Security Deposit |
| 8553 | 2244 | 03-2014 | 4/2/2014 | Village of Algonquin | 124-136r | | 648.23 | | Over payment of water bill from account 2095533 |
| 8554 | 2244 | 03-2014 | 4/2/2014 | Village of Algonquin | 124-136r | | 132.77 | | Over payment of water bill from account 2095533 |
| 8555 | 2244 | 03-2014 | 4/2/2014 | Atkinson Eye Care - RRJV(atkinson) | 124-136r | | 3,700.00 | | |
| 8569 | 2250 | 03-2014 | 4/2/2014 | Clean & Press(cleanpre) | 124-136r | | 4,946.00 | | |
| | | | | | | **Total** | 64,537.36 | | |

4/8/2014 4:35 PM

124-136 S Randall Rd, Algonquin (124-136r)

## Check Register

Period = Jan 2014-Mar 2014

| Control | Batch | Period | Date | Person | Property | Account | Amount | Reference | Notes |
|---------|-------|--------|------|--------|----------|---------|--------|-----------|-------|
| 4624 | 1481 | 01-2014 | 1/21/2014 | A&A Security Safety Supply, Inc (aasecur) | 124-136r | | 281.46 | 1000 | |
| 4625 | 1481 | 01-2014 | 1/21/2014 | Allied Waste Services #933 (allied-933) | 124-136r | | 453.33 | 1001 | |
| 4626 | 1481 | 01-2014 | 1/21/2014 | Chicago Title Land Trust Company (chicagotitle) | 124-136r | | 75.00 | 1002 | |
| 4627 | 1481 | 01-2014 | 1/21/2014 | Commonwealth Edison (comed) | 124-136r | | 86.09 | 1003 | |
| 4628 | 1481 | 01-2014 | 1/21/2014 | Elite Lawncare (elitelawn) | 124-136r | | 2,362.75 | 1004 | |
| 4629 | 1481 | 01-2014 | 1/21/2014 | Frontline Real Estate Partners, LLC (fronreal) | 124-136r | | 4,508.06 | 1005 | |
| 4630 | 1481 | 01-2014 | 1/21/2014 | Mesirow Financial (mesifina) | 124-136r | | 750.00 | 1006 | |
| 4855 | 1572 | 01-2014 | 1/30/2014 | Commonwealth Edison (comed) | 124-136r | | 205.29 | 1007 | |
| 4856 | 1572 | 01-2014 | 1/30/2014 | Village of Algonquin (villalgo) | 124-136r | | 781.00 | 1008 | |
| 4857 | 1573 | 01-2014 | 1/30/2014 | Allied Waste Services #933 (allied-933) | 124-136r | | 461.39 | 1009 | |
| 4885 | 1583 | 02-2014 | 2/10/2014 | Allied Waste Services #933 (allied-933) | 124-136r | | 914.72 | 1010 | |
| 4886 | 1583 | 02-2014 | 2/10/2014 | Commonwealth Edison (comed) | 124-136r | | 205.29 | 1011 | |
| 4887 | 1583 | 02-2014 | 2/10/2014 | Village of Algonquin (villalgo) | 124-136r | | 648.23 | 1012 | |
| 5119 | 1641 | 02-2014 | 2/19/2014 | Elite Lawncare (elitelawn) | 124-136r | | 942.00 | 1013 | |
| 5120 | 1641 | 02-2014 | 2/19/2014 | Nicor Gas Co. (nicor) | 124-136r | | 799.81 | 1014 | |
| 5308 | 1703 | 03-2014 | 3/5/2014 | Backflow Testing Services, Inc (backflow) | 124-136r | | 260.00 | 1015 | |
| 5309 | 1703 | 03-2014 | 3/5/2014 | Village of Algonquin (villalgo) | 124-136r | | 421.74 | 1016 | |
| 5411 | 1747 | 03-2014 | 3/11/2014 | Elite Lawncare (elitelawn) | 124-136r | | 2,224.00 | 1017 | |
| 5563 | 1787 | 03-2014 | 3/18/2014 | Commonwealth Edison (comed) | 124-136r | | 67.87 | 1018 | |
| 5564 | 1787 | 03-2014 | 3/18/2014 | FL RC Management, LLC (flrcmana) | 124-136r | | 274.28 | 1019 | |
| 5565 | 1787 | 03-2014 | 3/18/2014 | Nicor Gas Co. (nicor) | 124-136r | | 519.23 | 1020 | |
| 5744 | 1844 | 03-2014 | 3/28/2014 | Backflow Testing Services, Inc (backflow) | 124-136r | | 424.60 | 1021 | |
| 5745 | 1844 | 03-2014 | 3/28/2014 | Commonwealth Edison (comed) | 124-136r | | 141.24 | 1022 | |
| 5746 | 1844 | 03-2014 | 3/28/2014 | Eric Jacobson (ericjaco) | 124-136r | | 115.28 | 1023 | |
| 5747 | 1844 | 03-2014 | 3/28/2014 | Village of Algonquin (villalgo) | 124-136r | | 312.40 | 1024 | |
| | | | | | | **Total** | 18,235.06 | | |

## Aged Receivables Report

Detail by Resident
Property: 124-136 S Randall Rd, Algonquin (124-13
Trans through: 3/2014
Age As of: 3/31/2014

| Unit | Resident | Charge Code | Total Unpaid Charges | 0 - 30 days | 31 - 60 days | 61 - 90 days | Over 90 days | Prepayments | Balance |
|------|----------|-------------|---------------------|-------------|--------------|--------------|--------------|-------------|---------|
| **124-136r - 124-136 S Randall Rd, Algonquin** | | | | | | | | | |
| 126 | atkinson | Atkinson Eye Care - RRJV | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | -3,700.00 | -3,700.00 |
| 128A | newcliqu | New Clique, LLC | 11,489.68 | 3,670.00 | 3,670.00 | 1,587.00 | 2,562.68 | 0.00 | 11,489.68 |
| 132 | elfuego | El Fuego Tacos & Burritos | 5,443.45 | 3,717.00 | 1,726.45 | 0.00 | 0.00 | 0.00 | 5,443.45 |
| 136 | cleanpre | Clean & Press | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | -5,281.87 | -5,281.87 |
| **Total 124-136r** | | | 16,933.13 | 7,387.00 | 5,396.45 | 1,587.00 | 2,562.68 | -8,981.87 | 7,951.26 |
| **Total** | | | 16,933.13 | 7,387.00 | 5,396.45 | 1,587.00 | 2,562.68 | -8,981.87 | 7,951.26 |

# Rent Roll - Occupancy Summary

As of Date: 03/31/2014   Show Excluded Units: No   Show All Amounts: Monthly

Property: 124-136 S Randall Rd, Algonquin - 124-136r

| Unit | Lease Name | Lease Type | Lease From | Lease To | Term (Months) | Area | Base Rent | Rent Per Area | Recovery Per Area | Misc Per Area | Total Per Area | Deposit |
|------|-----------|-----------|-----------|----------|---------------|------|-----------|---------------|-------------------|---------------|----------------|---------|
| 126 | Addison Eye Care - | Retail - Net | 05/01/1994 | | - | 1,390 | 2,780.00 | 2.00 | 0.66 | 0.00 | 2.66 | 1,735.00 |
| 128A, 128B | New Clique, LLC | Retail - Net | 08/19/2013 | 08/30/2016 | 37 | 1,840 | 2,453.00 | 1.33 | 0.66 | 0.00 | 1.99 | 2,453.00 |
| 130 | CPR - Cell Phone Rep | Retail - Net | 10/01/2010 | 01/31/2016 | 64 | 1,840 | 2,300.00 | 1.25 | 0.66 | 0.00 | 1.91 | 767.00 |
| 132 | El Fuego Tacos & Bar | Retail - Net | 08/01/2013 | 07/31/2018 | 60 | 1,656 | 2,622.00 | 1.58 | 0.66 | 0.00 | 2.24 | 2,622.00 |
| 136 | Clean & Press | Retail - Net | 03/09/1996 | | - | 2,940 | 3,000.00 | 1.02 | 0.66 | 0.00 | 1.68 | 0.00 |
| 124 | VACANT | N/A | | | - | 1,280 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 134 | VACANT | N/A | | | - | 2,904 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |

## Summary

| | Total Units | Percentage | Total Area | Percentage | Total Basic Rent | Total Rent Per Area | Total Recovery Per Area | Total Misc Per Area | Total Charges Per Area | Total Deposit |
|--|-------------|-----------|------------|-----------|------------------|---------------------|-------------------------|---------------------|------------------------|---------------|
| Occupied | 6 | 75.00% | 9,666 | 69.79% | 13,155.00 | 1.36 | 0.66 | 0.00 | 2.02 | 7,567.00 |
| Vacant | 2 | 25.00% | 4,184 | 30.21% | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| **Totals** | **8** | | **13,850** | | **13,155.00** | **0.95** | **0.46** | **0.00** | **1.41** | **7,567.00** |

# EXHIBIT I

# Frontline Real Estate Partners

PNC Bank
1 N. Franklin, Suite 2150
Chicago, IL 60606
Re: Randall Road Joint Venture Receivership

**INVOICE**
**R5001**

April 15, 2014

### FOR PROFESSIONAL SERVICES RENDERED FOR THE PERIOD 1/14/14 – 3/31/14

**Receiver's Fees:**

| Period | Monthly Fee | | Proration | | Fees Due |
|---|---|---|---|---|---|
| 1/14/14 – 1/31/14 | $2,000.00 | x | 18 / 31 | = | $1,161.29 |
| 2/1/14 – 2/28/14 | $2,000.00 | x | 28 / 28 | = | $2,000.00 |
| 3/1/14 – 3/31/14 | $2,000.00 | x | 31 / 31 | = | $2,000.00 |
| **TOTAL** | | | | | **$5,161.29** |

Monthly Flat Fees $5,161.29

**Total Receiver's Fees** **$5,161.29**

**Additional Charges:**

None

**Total Receiver's Expenses** **$0.00**

**Total Amount Due** **$5,161.29**

Frontline Real Estate Partners, LLC
707 Skokie Boulevard Suite 580
Northbrook, IL 60062

# EXHIBIT J

## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

PNC Bank, National Association, successor in )
interest by merger to National City Bank, successor )
in interest by merger to MidAmerica Bank, FSB )
                                              )  No 13 cv 07271
                Plaintiff. )
                                              )  Property Address:
vs.                                      )  124-136 S. Randall Road
                                              )  Algonquin, Illinois 60102
Randall Road Joint Venture, an Illinois general )
Partnership; Chicago Title Land Trust Company, )  Assigned Judge: Robert M. Dow, Jr.
successor trustee to Amcore Investment Group as )  Magistrate Judge: Mary M. Rowland
Trustee Under Trust Agreement Dated December 15, )
1993 and Known as Trust Number 3504; Jeffrey R. )
Dunham; Robert R. Dunham; Power Pizza Company )
d/b/a Jake's Pizza, an Illinois domestic corporation; )
Phoenix Leasing Incorporated, a foreign corporation; )
                                          )
              Defendants. )

## ORDER

THIS MATTER coming on to be heard before this Honorable Court on approval of the Second Report of the Receiver, and the Court being fully advised in the premises;

### IT IS HEREBY ORDERED THAT:

1. The Second Report of the Receiver is approved including all fees and expenses of the Receiver as detailed in the Report;

2. The Receiver's Third Report shall cover the period through _____, 2014 and shall be filed by _____, 2014;

3. The approval hearing for the Third Report of the Receiver shall be on _____, 2014 at _____ in Courtroom 1703 of the United States District Court For The Northern District of Illinois, 219 South Dearborn Street, Chicago, IL 60604;

4. The lease termination agreement attached as Exhibit B of the Report is hereby approved.

**ENTER:**

_____
**JUDGE**
**Dated:** _____

Joshua E. Joseph / Receiver
707 Skokie Boulevard, Suite 580
Northbrook, IL 60062
(847) 770-6262

## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

PNC Bank, National Association, successor in )
interest by merger to National City Bank, successor )
in interest by merger to MidAmerica Bank, FSB )
                                  ) No 13 cv 07271
             Plaintiff. )
                                  ) Property Address:
         vs. ) 124-136 S. Randall Road
                                    ) Algonquin, Illinois 60102
Randall Road Joint Venture, an Illinois general )
Partnership; Chicago Title Land Trust Company, ) Assigned Judge: Robert M. Dow, Jr.
successor trustee to Amcore Investment Group as ) Magistrate Judge: Mary M. Rowland
Trustee Under Trust Agreement Dated December 15, )
1993 and Known as Trust Number 3504; Jeffrey R. )
Dunham; Robert R. Dunham; Power Pizza Company )
d/b/a Jake's Pizza, an Illinois domestic corporation; )
Phoenix Leasing Incorporated, a foreign corporation; )
                                    )
         Defendants. )

## ORDER

THIS MATTER coming on to be heard before this Honorable Court on approval of the Second Report of the Receiver, and the Court being fully advised in the premises;

### IT IS HEREBY ORDERED THAT:

1. The Second Report of the Receiver is approved including all fees and expenses of the Receiver as detailed in the Report;

2. The Receiver's Third Report shall cover the period through _____, 2014 and shall be filed by _____, 2014;

3. The approval hearing for the Third Report of the Receiver shall be on _____, 2014 at _____ in Courtroom 1703 of the United States District Court For The Northern District of Illinois, 219 South Dearborn Street, Chicago, IL 60604;

4. The lease termination agreement attached as Exhibit B of the Report is hereby approved.

**ENTER:**

_____
**JUDGE**
**Dated:** _____

Joshua E. Joseph / Receiver
707 Skokie Boulevard, Suite 580
Northbrook, IL 60062
(847) 770-6262

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

PNC BANK, National Association, and )
NATIONAL CITY COMMUNITY )
DEVELOPMENT CORPORATION, )
           )
    Plaintiffs, )
           )
  v. )    No.   13 CH 27573
           )    (Consolidated With 13 CH
26555)
COMMUNITY REINVESTMENT FUND 1997, LP, )
an Illinois Limited Partnership, )
COMMUNITY REINVESTMENT FUND 2000, LP, )
an Illinois Limited Partnership, )
COMMUNITY REINVESTMENT FUND 2003, LP, )
an Illinois Limited Partnership, and )
COMMUNITY REINVESTMENT FUND 2005, )
LLC, an Illinois Limited Liability Company, )
           )
    Defendants. )

## NOTICE OF ROUTINE MOTION

TO:    Attached Service List

PLEASE TAKE NOTICE that on April 18, 2014 at 9:30 a.m. or as soon thereafter as counsel may be heard, the undersigned shall appear before the Honorable Kathleen G. Kennedy in Courtroom 2502, Cook County Circuit Court, 50 W. Washington, Richard J. Daley Center, Chicago, Illinois, and shall then and there present Plaintiffs' Routine Motion to Voluntarily Dismiss Count II of their Verified Complaint, a copy of which is hereby served upon you, and shall move for the entry of the attached order in conformity with the Motion.

           PNC BANK, N.A and
           NATIONAL CITY COMMUNITY
           DEVELOPMENT CORPORATION

           By: _____
               One of their attorneys

CROWLEY & LAMB, P.C.
221 N. LaSalle, Suite 1550
Chicago, Illinois 60601
(312) 670-6900